[No. 7804.]

## STEINHAUER ET ALS. V. HENSON.

1. SALE—*Option to Return—Effect*—Where goods are purchased with an option to return them, the title passes, subject to the right to rescind and return.

2. ——*Option to Purchase*—In the case of a mere option to purchase the title remains in the one granting such option; the delivery of the goods to the one receiving the option is a mere bailment. If the bailee fails to exercise his option within a reasonable time, where no time is specified, the bailor may recall the goods.

3. ——*Duty of Seller*—One who has granted to another an option to purchase an article, no time being appointed for its return, or for the exercise of the option, shortly thereafter closes his place of business, goes abroad, and so remains till after the death of the optionee. He is not to be heard to complain of the failure of the optionee to return the article, nor will the option be converted into a purchase by such failure.

Whether the optionee was under duty to take affirmative action, and return the goods, *Quere.*

4. CONTRACTS—*Construed*—A memorandum was signed by both parties as follows: "Pictures left with Mr. Smith on approval." Then followed the names and description of certain pictures. Opposite to each was set down the price, the whole amounting to...........$1,900

Under this was the following: "Credit by old frame......  ·  10
                                                            ————
                                                          "$1,890"

"The above paintings may be exchanged at any time for face value "(that is, the price paid plus the increased market value)." *Held*, not a sale but a mere option to purchase.

*Error to Denver District Court.*—Hon. HUBERT L. SHATTUCK, Judge.

Mr. JOHN A. EWING, for plaintiffs in error.

Mr. JAMES J. BANKS, Mr. FRANCIS J. KNAUSS, Mr. H. E. LUTHE and Mr. C. R. BELL, for defendant in error.

CHIEF JUSTICE MUSSER delivered the opinion of the court:

Henson was engaged in selling paintings in Denver and made his headquarters at a certain studio where his pictures were on exhibition. About January 14, 1910, Smith and his wife visited the studio. After the visit and on the same day, or the next, three paintings were taken by Henson to Smith's residence, where they were at the time of Smith's death, which occurred on May 9th following. After the latter part of January, Henson did not make the studio his headquarters, but what pictures he had were taken to his residence. Early in February, Henson, leaving his residence in charge of a servant, went to Europe where he remained until July. After his return, he filed a claim against Smith's estate for the paintings left at Smith's residence. The county court disallowed the claim. On appeal, the district court, after a trial to the court, allowed the claim against the estate. Aside from the above facts, the only material evidence introduced by Henson was the following memorandum:

"Denver, Colo., Jan. 25, 1910.

Pictures left with Mr. Smith on approval:—

| | |
|---|---:|
| 1 water color by "Gabrini" (Music Master) | $1,200.00 |
| 1 water color by "ter Burgh" (Dutch Mill) | 250.00 |
| 1 oil by "de Mester" (Shore Scene) | 450.00 |
| | $1,900.00 |
| Cr. by old frame | 10.00 |
| | $1,890.00 |

The above paintings may be exchanged at any time for face value (that is the price paid plus the increased market value.)

J. E. Henson,

American Agent,

L'Ouvre,

FRANK L. SMITH."

It was admitted that the signatures were those of Henson and Smith. Henson contends that this memorandum is evidence of a sale to Smith with the option of returning the paintings if the latter did not like them. The administrators contend that the memorandum shows that Smith did not buy the pictures, but that they were left with him with the option to purchase them if he liked them. If the parties understood that a sale had been made they certainly would have used words to express that understanding. The idea of a sale is a simple one and could have been simply expressed by the use of the words "sold to" instead of "left with," if the parties so understood it. "Pictures sold to Mr. Smith on approval" would be easily understood to mean that Smith bought the pictures with the option of returning them if he did not like them. "Pictures left with Mr. Smith on approval" would be a simple way to express the idea that the pictures were left with Smith with the option to purchase them if he liked them. The rest of the memorandum would then mean that if Smith bought them he was to have them at the prices named, receive credit

for an old frame and have the privilege of exchanging the pictures at any time for face value as expressed. Smith did not agree to return them at any particular time. Of course if he did not choose to exercise his option to take the pictures in a reasonable time, Henson could have recalled the option and retaken them. We do not say that Smith would have been called upon to move within a reasonable time, but if he had been, he had no opportunity to do so, for Henson went away in a few days after the date of the memorandum, and remained away until after Smith's death. An option to return a purchase, if one does not approve, is different from an option to purchase, if one does approve. In the former case, the title passes, subject to the right to rescind and return; in the latter, the title does not pass until the option to buy is determined. The former is a sale and delivery, the latter a bailment which may be converted into a sale, at the option of the bailee.— *Hunt v. Wyman,* 100 Mass. 198.

The transaction between Henson and Smith was a bailment with the option to purchase, and as the option was never determined no sale took place. It follows that the judgment of the district court was wrong and is reversed and the cause remanded.                    *Reversed and Remanded.*

Mr. JUSTICE GABBERT and Mr. JUSTICE HILL concur.

Decided March 3, A. D. 1913. Rehearing denied April 7, A. D. 1913.