## No. 16,602.

### Ferry-Morse Seed Company *v.* Board of County Commissioners.

(250 P. [2d] 1003)

Decided November 3, 1952.

Messrs. HANEY & HOWBERT, for plaintiff in error.

Messrs. SNYDER & TULLIS, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

DURING the years from 1934 to 1946, inclusive, plaintiff in error, plaintiff in the trial court, delivered assortments of seeds to various merchants in El Paso county. Each year the county assessor assessed this merchandise

against plaintiff. Through correspondence with the assessor at various times during the period involved, plaintiff denied ownership, or, in other words, contended that title to the merchandise had passed to the merchants and the assessment should be as against the merchants. The merchants never listed the property in their inventories and deny ownership. Finally, in 1947, plaintiff was notified that if all taxes assessed against the seeds for the period covered were not paid immediately, all seeds then from plaintiff in El Paso county would be distrained. Plaintiff, desiring to retain the merchant relation, paid, under protest, the entire tax and this suit was instituted by it against the board of county commissioners to obtain a refund of the amount paid.

Defendant's motion to dismiss was denied; answer was filed; the case tried to the court without a jury November 29, 1949; and the court found in favor of defendant. Plaintiff freely admits that if it be determined that it was the owner of the seeds, then the tax levied was proper.

Controversy rests upon the construction to be placed upon the order forms used in ordering the merchandise from plaintiff, and, of course, the construction placed upon the orders and the handling of the merchandise by the merchants. There is no reason to detail the testimony introduced by defendant since it is the testimony of some of the various merchants indirectly involved, and was to the effect that they never considered themselves owners of the merchandise, never included it in their inventories, and in cases of fire, was not covered by insurance and no claim was made to the insurance company. Plaintiff's evidence was the testimony of the secretary of the plaintiff company, employed by the company since 1913, who stated that the company was incorporated in the state of Michigan; had engaged in interstate commerce since 1856; that its business consisted of selling seeds in packets to merchants throughout all the states of the United States; and had sold the

seeds in question to the merchants in El Paso county during the period involved. Plaintiff's other witness had been a salesman for the company approximately fifteen years and was, during the period involved, the only representative of the company selling seeds in El Paso county. The company salesman visited the dealers in the fall of the year and took orders for seeds to be delivered to the dealers the following year, which orders were sent to the home office in Detroit. It seems that the matter of the kind and quantity of seed was left to the salesman in each instance, who apparently was familiar with the needs of the merchant and the community, and the merchant rarely had anything to say about the order. However, when it was prepared by the salesman, it was signed by the merchant and was turned in to plaintiff by the salesman. When the salesman called on the merchant, usually in September of each year, he would make an inventory of the seed the merchant had on hand that was left over from the season's sales and would give the dealer a credit slip therefor. At that time the merchant would pay his account to the salesman, the amount of which was arrived at by first figuring the amount owed by the dealer for the display case and seed ordered by the dealer and then deduct the amount of the value of the seed returned or repurchased by the company, according to the credit slip. The contract or order called for an assortment of seeds and the quantity and size of the assortment was determined by the company at its Detroit office.

It was disclosed by the testimony that plaintiff company made suggested retail prices for the seed which appeared on the seed packages; however, this was not binding upon the merchant. Plaintiff insists on what it says was a repurchase of the unsold seed on hand at the end of the seed-selling season; and this practice is followed in order to get the old seed off the market. Plaintiff ships all of the seed for the various merchants to the Robinson Grain Company in Colorado Springs, to which

it pays a stipulated amount to deliver the seed to each individual merchant or dealer because the terms of the contract provide that plaintiff pay the transportation charges. The secretary testified that the company did not pay taxes in any of the states except in those where it is doing business, namely, Michigan and California.

Plaintiff contends that the order forms or contracts, copies of the pertinent parts of which are exhibits in the case, belong to the class of agreements known as contracts of "sale or return;" and that under the contract, title to the seed passed from plaintiff and vests in the local merchant or dealer upon delivery.

Defendant contends that the transactions were those in the nature of consignment or bailment. Copies of the order forms used for the years involved are all generally similar in nature with two exceptions: The early or first forms, those of 1935 and 1936, contain the statement, to be sold during the season of 1936 and 1937, a copy of the 1936 order form follows:

"Date_____1936

"Ferry-Morse Seed Co., Detroit, Mich.

"Please forward in due season an assortment of Ferry's seeds to be sold during the season of 1937.

"Credit at invoice price is to be allowed for seeds and boxes returned in good order when return is requested. Payment is to be made at the same time for amount due at invoice prices for all seeds and boxes not so returned, less a discount of 40% on the papers not returned and 25% on the packages not returned.

"X_____
                    Signature"

The 1946 form contains "Title passes at Detroit, * * * " and is set out in full as follows:

"Date Sept. 13, 1946

"Ferry-Morse Seed Co., Detroit 31, Mich.

"Please forward in due season an assortment of Ferry's seeds for 1947.

"The undersigned will pay for all seeds and displays

at the invoice prices indicated hereon upon request. He agrees to sell at such time, and Ferry-Morse Seed Co., agree to purchase, all seeds then in good condition, and displays, at invoice prices. This repurchase will be credited against the amount due from the undersigned. Title passes at Detroit, but freight charges will be paid by Ferry-Morse Seed Co. All orders are subject to this agreement and to acceptance at Detroit. An allowance of 15% of the amount due in excess of $15.00 will be made, each store to be considered a separate unit.

"X    J. R. Lowell"

A specimen of the other forms, selected at random from the exhibits, is as follows:

"Date........................................1938

"Ferry-Morse Seed Co., Detroit, Mich.

"Please forward in due season an assortment of Ferry's seeds for 1939.

"The undersigned will pay for all seeds and displays at the invoice prices indicated hereon upon your request, and agrees to sell at such time and you agree to purchase, all seeds then in good condition, and displays, at invoice prices. This repurchase to be credited against the amount due from the undersigned. Freight charges will be paid by you. All orders are subject to this agreement and to your acceptance at Detroit. An allowance of 15% of the amount due in excess of $15.00 will be made, each store to be considered a separate unit.

"X..............................................."

Plaintiff in error has submitted twenty specifications of points upon which it relies for reversal. In substance, the various specifications are directed to one controlling question in the case, and that is, that the trial court determined that the real nature of the transactions between plaintiff and the various merchants amounted to sales on consignment. Plaintiff contends that the transaction represents a completed sale and that the order signed by the local merchant when accepted at Detroit by plaintiff constituted the entire contract and the con-

tract belongs in the class of agreements known as contracts of "sale or return" and further that under this contract, title to the seeds passed from plaintiff and vested in the merchant upon delivery of the seeds to the carrier.

At the outset, it is pertinent to observe that this so-called entire contract, which is disclosed by the copies of the exhibits hereinbefore set out, is unilateral in its nature because it is signed only by the merchant and no place on the face thereof is there an acceptance by the company. In this respect, if only the merchant is bound by the contract, then it has the initial appearance of a contract of bailment or consignment. If uncertainty as to this question exists on the face of the so-called contract, then the ambiguity or uncertainty is interpreted against plaintiff, who drew the contract.

An interesting sidelight on the transactions between plaintiff and the various merchants over the thirteen-year period involved, is what appears to have been the consignment nature of the orders at the very outset in 1935 and 1936 when the order is clearly indicative of the merchant's idea as well as that of plaintiff when it accepted the merchant's order under the first line thereof which reads, "Please forward in due season an assortment of Ferry's seeds to be sold during the season of 1936," and likewise, " * * * for the season of 1937." The record is silent as to any discussion by plaintiff with any of the merchants involved about any change in the order forms which were followed in the later years. It is reasonable to assume under such circumstances that the merchant considered these transactions as consignments and was never advised to the contrary.

There is nothing mystifying about the word "sell" and plaintiff was not prevented from its use in these contracts which would have simplified the entire matter and removed all doubt. We are not impressed with plaintiff's view and contention that these contracts belong to the "sale or return" class of contracts, because if

an option to return the merchandise can be read into this contract as it relates to the entire bill of goods, no time is fixed for the exercise of that option and apparently no allowance for its exercise within a reasonable time. There is nothing said about return, but it is dealt with under the guise of repurchase, which, of course, under all the circumstances involved here means, and applies to, the unsold seed at the end of the seed-selling season, therefore we see nothing in this contract that definitely fixes a sale with the right of disapproval by the merchant and return of the goods in lieu of the purchase price.

Under the Uniform Sales Act, adopted as chapter 228, S.L. '41, rule 3 (1) of section 19 thereof, we find:

"When goods are delivered to the buyer 'on sale or return,' or on other terms indicating an intention to make a present sale, but to give the buyer an option to return the goods instead of paying the price, the property passes to the buyer on delivery, but he may revest the property in the seller by returning or tendering the goods within the time fixed in the contract, or, if no time has been fixed, within a reasonable time."

"An option to return a purchase, if one does not approve, is different from an option to purchase, if one does approve. In the former case, the title passes, subject to the right to rescind and return; in the latter, the title does not pass until the option to buy is determined. The former is a sale and delivery, the latter a bailment which may be converted into a sale, at the option of the bailee." *Steinhauer v. Henson*, 54 Colo. 426, 131 Pac. 255.

Plaintiff contends that it lost control over the seeds when same were delivered to the merchant. In part, this is true, however, counsel for plaintiff contend that the merchant was "obligated to resell such seed to plaintiff," meaning the unsold seed. If that was the existing requirement, then plaintiff would retain some control to the end that the seeds be sold according to the general marketing plan or returned to it. It seems to us

that the determining feature of the contracts is the provision made for the taking up of the unsold seeds by plaintiff from the merchant and giving him credit as against the invoice price of the entire shipment, and then asking him to settle for the seeds disposed of. It would indicate thereby that the right of property remained in plaintiff, because if it was an outright sale to the merchant, the absolute right to require return of any part of the merchandise involved did not exist and it is absurd to say that if the absolute right and ownership of the property had passed to the merchant by the transaction, that he still could be bound to return it and the seller be bound to receive. By these contracts, it is apparent that the merchant was denied the right of an option to keep or return the unsold goods.

These order forms or so-called contracts are extraordinary in nature because of the noted evolution in form from year to year. It appears that, as the interest of plaintiff might indicate, they have been drawn, as has been aptly said, to enable plaintiff "to run with the hare or hold with the hounds." It is not denied that at the outset of the period here involved, plaintiff was notified by the taxing authorities that the assessment has been made and that correspondence concerning these assessments continued at intervals throughout the entire period. With full notice, plaintiff inaugurated slight changes in the order form or so-called contract until the 1946 form, in which the words "Title passes at Detroit" were added. If an outright sale, as other merchandise is bought and sold, was to be accomplished, appropriate form for such a transaction would have been less difficult to prepare than the ones we observe to have been used. Further, it is natural to assume that if the merchant thought he was buying something outright with which he would be taxed as the owner, he would want to see and know what he was buying instead of following the custom here revealed. If it was a sale, definite

terms of settlement no doubt would have been fixed. Every earmark of consignment is present.

Since the disposition of this case is favorable to defendant in error, we do not deem it necessary to discuss the cross-specification of points. We are in agreement with the following statement of the trial court to be found in its findings of fact and conclusions of law: "That notwithstanding the form of contract appearing on the form of order used in connection with said seed business of the plaintiff, the conduct of the parties and the mode and usual course of carrying on said seed business during the years 1934 to 1946 in El Paso County, Colorado, between the plaintiff and said merchants, and the real nature of the transactions amounted to sales on consignment, and not to absolute sale or sale and return transactions, and that the form of contract appearing on said orders was a subterfuge disguising the real nature and conduct of said business; that the parties to said transactions at all times treated said transactions as being sales on consignment, and that title to said seed remained in the plaintiff until sold by said merchants in the usual course of business."

If title passed according to the order of September 13, 1946, by virtue of the words "Title passes at Detroit," which is questionable, the delivery under this particular order must fall within the category herein fixed for the other so-called contracts or orders more fully discussed, more particularly because of the course of dealing relied upon by the merchants.

The judgment is affirmed.

MR. CHIEF JUSTICE JACKSON not participating.