In the Matter of AMERICAN MERCHAN-
DISING CO., Inc., a corporation,
Bankrupt.
No. B 78–55.

United States District Court
D. New Jersey.
Dec. 28, 1955.

Rudolph Eisner, Trenton, for petitioner.

Joseph Fishberg, Trenton, for trustee.

FORMAN, Chief Judge.

On July 22, 1954 White Horse Products Co. and Florence Auction Sales, acting through Donald Block, entered

into an agreement with Ray Brooks to lease to him a building and to sell him personal property as follows:

To lease a building at U.S. Route 130 and Ninth Street, Florence, New Jersey, 60' x 90', for one year beginning August 1, 1954, at an annual rental of $4,800, payable in monthly installments of $400 each for use as an auction market;

To sell all merchandise, good will, and the use of the name of Florence Auction Sales for $12,000, payable $500 on or before July 26, 1954; $500 on or before August 2, 1954; $5,000 on or before August 5, 1954; $6,000 on or before September 15, 1954, to be evidenced by a promissory note reduceable by the payment of $1,000 monthly without interest.

It was further provided that a detailed formal lease and bill of sale were to be drawn up, but that this agreement was to remain binding upon the parties and not revocable for failure to execute a future draft.

On August 24, 1954, an agreement was entered into between American Merchandising Co., Inc., a New Jersey corporation and Ray Brooks, who was its president, on the one hand, and Donald Block (for convenience, hereinafter called Block), individually and for and in behalf of Florence Auction Sales and White Horse Products Company, on the other hand. It recited that Block had sold to American and Brooks certain merchandise, formerly the stock in trade of the Florence Auction Sales, as delivered on July 22, 1954, and the good will of the auction, retail and wholesale market, and business theretofore conducted by Florence Auction. The sale was made subject to, among others, the following conditions:

The purchase price was fixed at $12,000, to be paid by $1,000 on the signing of the agreement and the balance of $11,000 in weekly installments of $250 with interest at 6 per cent, with the first weekly installment and interest due on August 30, 1954. In the event of a failure to pay any weekly installment then the remaining unpaid balance should become immediately payable in full.

To secure the payment of the obligation American and Brooks agreed:

(a) To execute and deliver whenever so requested during any time that any indebtedness remained unpaid, a chattel mortgage in proper form for recording on all property of American and Brooks,

(b) to pay out of the sales of the merchandise sold under the agreement or out of sales of different merchandise all sums due to Block, setting aside each week all proceeds of sale until a sum sufficient to pay the installment due to Block should be accumulated, and

(c) that upon failure of American to make any weekly payments when due or failure to perform the conditions (a) and (b) above, Block should be entitled to take possession of and retain all proceeds of sale each week until the amount due for such week is collected.

The agreement also contained the following provision, under which this reclamation proceeding arose:

"In the event of any failure or refusal to make when due any payment of principal or interest payable hereunder, the party of the second part (seller) shall have the right, summarily to seize and retake any of the merchandise delivered hereunder and deal with the same as its own property; in such case, said merchandise thus retaken shall be deemed to have been delivered on consignment only."

Block alleges that on February 5, 1955, American was in arrears for the monthly rental of $400, which was due February 1st, and also had failed to make its installment payments for merchandise. Block therefore levied a distraint for the rent on the merchandise contained in the building.

On February 8, 1955, Block declared the entire balance, amounting with interest to $5,500, due and payable because

of default and retook possession of the said merchandise under the above clause. Block admits he was aware of the insolvent condition of American at the time.

On February 9, 1955, three creditors petitioned for an adjudication of involuntary bankruptcy of American, and a receiver was appointed that day. Immediately upon his appointment the receiver took possession of the building and merchandise by locking the building containing the same.

On February 10, 1955, Block gave the receiver notice that he was the owner of certain items of personalty actually in his possession and that the receiver had no right to them.

On February 14, 1955, American was adjudicated a bankrupt on its consent. Subsequently a trustee succeeded the receiver and on March 9, 1955, the trustee and Block entered into a stipulation that the trustee should sell the merchandise claimed by Block and that the proceeds of sale of such items would be subject to any rights Block could sustain against the items thus sold. The sale was held March 21, 1955, and the stake in this litigation now amounts to about $1,200.

The Referee determined that the transfer back to Block on the day prior to bankruptcy was a voidable preference under Section 60, sub. a (1) of the Bankruptcy Act, as amended in 1950, 11 U.S. C.A. § 96, sub. a(1):

> "A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

The Referee held that the agreement in this case was controlled by Harding v. First-Mechanics Bank, E. & A. 1933, 113 N.J.Eq. 129, 166 A. 142, and set aside the transfer to Block.

 Block seeks review here and submits that the transaction he entered into was a "sale arrangement with certain sale, consignment, conditional and rescission provisions and characteristics"; that the retaking was authorized by the terms of the particular contract and since it occurred before bankruptcy he is entitled to the goods as against the trustee.

Block concedes that the agreement under which he retook possession of the merchandise whose proceeds are in question here is not a conditional contract of sale or a chattel mortgage. He does not insist that it should be called a consignment, but he maintains that it is of that nature and by reason of its retroactive mechanism it is entitled to the immunities that a good-faith consignment would have in bankruptcy. See Ludvigh v. American Woolen Co., 1913, 231 U.S. 522, 34 S.Ct. 161, 58 L.Ed. 345. However, a contract of consignment or bailment is premised upon the uninterrupted retention of title in the consignor or bailor. And when made for purposes of sale by the bailee, it includes the right in the bailee to return the goods. American had no such right under the contract here. Although repossession by a bailor under a valid contract of bailment does not constitute a voidable preference, Ludvigh v. American Woolen Co., supra; 3 Remington § 1212.02, a showing of good faith in establishing the bailment relation must be made before this result will occur. The provision in the contract in this case attempting to create a consignment *ab initio* plainly demonstrates a lack of this requirement. No matter what validity such a provision may have *inter partes*, it will not be permitted to impair the rights of third parties—the general creditors represented by the trustee. As a patent attempt to circumvent § 60 of the Bankruptcy Act, the provision endeavoring to construct an *ex post facto* consign-

ment must be ignored. Swetnam v. Edmund Wright Ginsberg Corporation, 2 Cir., 1942, 128 F.2d 1, 4, certiorari denied 1942, 317 U.S. 347, 63 S.Ct. 42, 87 L.Ed. 521.

The contract remains as one calling for re-transfer to the petitioner upon the happening of an uncertain condition —the debtor's default. This is a species of transfer that is amenable to the trustee's avoiding powers under § 60. Tilt v. Citizens' Trust Co., D.C.N.J.1911, 191 F. 441, 449, affirmed o. b. *sub nom.* Citizens' Trust Co. of Paterson, N. J. v. Tilt, 3 Cir., 1912, 200 F. 410, appeal dismissed, 1914, 235 U.S. 710, 35 S.Ct. 198, 59 L.Ed. 436; In re Great Western Mfg. Co., 8 Cir., 1907, 152 F. 123; Swetnam v. Edmund Wright Ginsberg Corporation, supra; 4A Remington § 1696.

Block's main reliance is on two cases, which are no longer sound authority, Bailey v. Baker Ice Machine Co., 1915, 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275, and Adams v. City Bank & Trust Co., 5 Cir., 1940, 115 F.2d 453, 134 A.L.R. 1215, certiorari denied 1941, 312 U.S. 699, 61 S.Ct. 739, 85 L.Ed. 1133. The Bailey case involved a lien created between the parties more than four months prior to bankruptcy but which would not serve to affect the rights of third parties until recording of the lien. The creditor sought to perfect the lien by recording within the four-month period. It was held that the recording was effective against the trustee.

The Adams case involved a similar situation. The court posed the following question:

"Does a bill of sale conveying personal property to secure an indebtedness simultaneously created become a preference voidable in bankruptcy, when subsequently recorded while the debtor is insolvent and within four months before the filing of the petition in bankruptcy, the creditor having reason to believe, at the date of filing for record, that the debtor is insolvent?" 115 F.2d at page 453.

The question was answered in the negative.

First, it must be kept in mind that had the contracts in the Bailey and Adams cases never been recorded, there can be no doubt that the purported lienors in those cases could have had absolutely no claim to secured creditor status in bankruptcy. One cannot attain that status by secret lien. That is the meaning of Harding v. First-Mechanics Bank, supra, upon which the Referee relied. The facts of that case are identical with those of the Adams case for purpose of analysis here, except that in the Harding situation the conveyance intended to operate as a lien was never recorded. Block seeks to take this case out of the Harding analogy and into Adams and Bailey by arguing that his exercise of his lien rights by re-assuming possession of the goods amounted to the same perfection of lien accomplished in those cases by recording.

This argument brings into play § 60, sub. a (2) of the Bankruptcy Act, as amended in 1950:

"For the purposes of subdivisions a and b of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. A transfer of real property shall be deemed to have been made or suffered when it became so far perfected that no subsequent bona fide purchase from the debtor could create rights in such property superior to the rights of the transferee. If any transfer of real property is not so perfected against a bona fide purchase, or if any transfer of other property is not so perfected against such liens by legal or equitable proceedings prior to the filing of a petition initiating a proceeding under this

Act, it shall be deemed to have been made immediately before the filing of the petition."

In the Bailey and Adams cases a subsequent recording within four months of bankruptcy was held to insulate a prior transfer from the trustee's avoiding powers. Under the perfection clause just the opposite occurs; the giving of security is deemed to have occurred on the date the instrument of security is recorded instead of on the date it was executed as was held in the Bailey and Adams cases. This interpretation of the perfection clause was considered by the court and rejected in the Adams case.

A short while after that case the Court of Appeals for this circuit openly expressed its disagreement with the Adams case in In re Quaker City Sheet Metal Co., 3 Cir., 1942, 129 F.2d 894, where in an identical situation the transfer was held to be preferential and voidable. The Third Circuit's view has prevailed. In re Quaker City Sheet Metal Co. was affirmed *sub nom.* Corn Exchange Bank v. Klauder, 1943, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884.

Thus, even if the agreement in question is sufficient under New Jersey law to create a lien (an assumption implicit in Block's argument), and the retaking of possession be deemed a perfection of that lien, the transfer in contemplation of law (under the perfection clause) took place on the day prior to bankruptcy and is well within the avoiding powers under § 60.

There are other cases Block could have cited along with Bailey v. Baker Ice Machine Co. which support the now-discredited "relation-back" doctrine. Thompson v. Fairbanks, 1905, 196 U.S. 516, 25 S.Ct. 306, 49 L.Ed. 577; Sexton v. Kessler, 1912, 225 U.S. 90, 32 S.Ct. 657, 56 L.Ed. 995; Carey v. Donohue, 1916, 240 U.S. 430, 36 S.Ct. 386, 60 L. Ed. 726; Martin v. Commercial National Bank, 1918, 245 U.S. 513, 38 S.Ct. 176, 62 L.Ed. 441. For general discussion

of the development of the law under § 60, with particular emphasis upon the 1938 Chandler Act, and the 1950 amendments, see, Kupfer and Livingston, Corn Exchange National Bank & Trust Company v. Klauder Revisited: The Aftermath of Its Implications, 32 Va.Law Rev. 910 (1946); Hanna, Preferences in Bankruptcy, 15 U. of Chi. Law Rev. 311 (1948); Kupfer, The Recent Amendment of Section 60–a of the Bankruptcy Act, 24 J.Nat.Ass'n Ref. Bkcy. 86 (1950); Sell, Preferential Transfers for Security Under Section 60 of the Bankruptcy Act, 12 U. of Pitt. Law Rev. 172 (1951); Moore and Countryman, Debtors' and Creditors' Rights, Cases and Materials, pp. 800–816 (New York 1951); Yankwich, Preferences under Section 60 of the Bankruptcy Act, 27 J.Nat.Ass'n Ref.Bkcy. 31 (1953).

After the Chandler Act in 1938 the trustee in Bankruptcy was given, for purposes of timing the transfer under the "perfection clause", the status of a hypothetical bona fide purchaser and the "perfection clause" read as follows:

"* * * a transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, and, if such transfer is not so perfected prior to the filing of the petition in bankruptcy * * * it shall be deemed to have been made immediately before bankruptcy."

The 1950 amendment to § 60 changed the status of the trustee from that of a bona fide purchaser to that of judgment lien creditor insofar as the timing of preferential transfers of personal property is concerned. The trustee remains in the shoes of a bona fide purchaser as to real property in order to avoid a recurrence of a situation like that in Carey v. Donohue, supra. See § 60, sub. a(2), 11 U.S.C.A. § 96, sub. a(2), supra.

It is obvious that this change in the trustee's status cannot affect the result of this case.

Block sold his merchandise to American almost completely on credit. To have covered his parting with his goods with a conditional contract of sale meant that he would have to file timely and then all prospective suppliers of American would have known how little equity it really had in what appeared to be its merchandise. Apparently it was much to the interest of Block that American should be able to secure other merchandise on credit, and American was highly successful in attracting this credit to the tune. of $25,000, as the schedule of merchandise creditors filed herein indicates.

So to protect himself against the superior position which the trustee in bankruptcy could assume against an unfiled conditional sales contract Block contrived this hybrid agreement whereby he reserved his right to retake at any time after default by American. Thus, he argues, he had no obligation to file because his agreement was not a conditional contract of sale and having retaken the merchandise a day before bankruptcy he contends that the trustee acquired no superior right because he was on notice that the merchandise was no longer the property of the bankrupt, for it was in Block's possession and that was actual notice to the trustee that the bankrupt had no interest in the goods.

This argument, and indeed the agreement itself, is disingenious, particularly since the Chandler Act and the case of Corn Exchange Bank v. Klauder, supra. Avoidance of the appearance of a conditional contract of sale by the insertion of the trigger mechanism which shot the goods back into Block's possession on default was a secret arrangement creative of a preference under § 60, sub. a, regardless of its form. The trustee in bankruptcy was entitled to avoid the transfer and the Referee rightfully so held. His decision will be affirmed.