GENERAL ELECTRIC COMPANY *vs.* PETTINGELL SUPPLY
COMPANY & another.

Middlesex.    May 7, 1964. — June 10, 1964.

Present: WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Uniform Commercial Code,* "Sale or return," Delivery "for sale," Consignment.

Where it appeared that a manufacturer of large electric lamps appointed
an agent "to sell or distribute" the lamps, that the agency contract provided that the agent should not have title to lamps delivered to it at
any time and that the manufacturer should "maintain on consignment"
a stock of lamps in the agent's custody for disposal by it by sale
directly to its own customers or by deliveries under contracts of sale
made by the manufacturer or by distribution to other agents of the
manufacturer, and that the agent maintained a wholesale place of business "buying and selling electrical, hardware and housewares merchandise" in addition to such lamps and under a name other than the name
of the manufacturer, conclusions were required that the lamps delivered
to the agent were "for sale" and "deemed to be on sale or return"
within § 2–326 (3) of the Uniform Commercial Code, G. L. c. 106, and,
under § 2–326 (2), were subject to the claims of the agent's creditors
while in the agent's possession.

REPLEVIN.    Writ in the Superior Court dated September
25, 1962.

The action was heard by *Pecce,* J.

*Frank B. Frederick (Finley H. Perry* with him) for the
plaintiff.

*John F. McCarty, Jr. (Michael H. Goshko* with him) for
the defendants.

WHITTEMORE, J.    The plaintiff by writ of replevin took
from the defendant David S. Miller, assignee for the benefit
of creditors of the defendant Pettingell Supply Company,
certain large lamps that had been delivered by the plaintiff
to Pettingell as "agent to sell or distribute" such lamps.
Large lamps are "lamps used in commercial and industrial
installations."    General Electric by outline bill of exceptions presents for our review the ruling of the judge in the

General Electric Co. *v.* Pettingell Supply Co.

Superior Court that because of the Uniform Commercial Code (G. L. c. 106, inserted by St. 1957, c. 765, § 1) the plaintiff must return the replevied goods. The record appendix contains portions of the testimony and exhibits. The judge found the facts in a memorandum in connection with his disposition of the plaintiff's requests for rulings.

The sole issue argued concerns the effect of G. L. c. 106, § 2–326, on the rights of the parties.[1] That section provides in relevant part: "(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is . . . (b) a 'sale or return' if the goods are delivered primarily for resale. (2) . . . [G]oods held on sale or return are subject to . . . claims [of the buyer's "creditors"] while in the buyer's possession. (3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as 'on consignment' or 'on memorandum.' However, this subsection is not applicable if the person making delivery (a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign; or (b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others; or (c) complies with the filing provisions of the Article on Secured Transactions (Article 9)."

---

[1] It is not contended that the agreement between General Electric and Pettingell was "intended to create a security interest" in the large lamps so that provisions of Article 9 other than the filing provisions would be relevant. See generally Coogan, Hogan and Vagts, 1 Secured Transactions under the U. C. C. (1963) §§ 5.03 (2) (b), 10.05 (2); Hawkland, Consignments Under the Uniform Commercial Code: Sales or Security? Boston College Industrial and Commercial L. Rev., Uniform Commercial Code Co-ordinator, 395, 407 (1963); Hawkland, Consignment Selling Under the Uniform Commercial Code, 67 Commercial L. J. 146; Hawkland, The Impact of the Commercial Code on the Doctrine of Moore v. Bay, 67 Commercial L. J. 359, 362.

General Electric concedes that clauses (a), (b), and (c) of subsection 3 did not operate to exclude the arrangement between it and Pettingell from the operation of the subsection and accepts as conclusive the judge's findings and rulings to that effect. The plaintiff also concedes that if Pettingell's creditors have claims under § 2–326, Miller, who took possession of the large lamps from Pettingell, may establish these claims. See G. L. c. 106, § 1–201 (12). Hence, if this is a transaction which § 2–326 (3) characterizes as a "sale or return" the large lamps are subject to the claim of Miller as assignee.

The plaintiff contends that § 2–326 is applicable only to cases where the relationship between manufacturer and dealer is that of seller and buyer and that inasmuch as the contract in suit establishes only a principal-agent relationship between the plaintiff and Pettingell no part of § 2–326 is applicable.

We disagree with the contention that § 2–326 (3) is inapplicable. That subsection is by its terms concerned with certain transactions which, although they may not be sales under the definition of G. L. c. 106, § 2–106 (1), are nonetheless "deemed to be on sale or return" "with respect to claims of creditors of the person conducting the business . . . ." The subsection specifically states that it is applicable even though the "agreement purports to reserve title to the person making delivery until payment or resale or uses such words as 'on consignment' or 'on memorandum.' " The agreement between the plaintiff and Pettingell binds the former "to maintain on consignment in the custody of the·agent, to be disposed of as herein provided, a stock of said General Electric large lamps."

The plaintiff relies on the wording of the second sentence of § 2–326 (3) which states that the subsection applies even though there is a reservation of title "to the person making delivery until payment or *resale*" (emphasis supplied). From this the plaintiff argues that the subsection applies only where the manufacturer has sold the goods to the dealer because otherwise there could be no "resale." The second sentence gives examples of transactions to which the

subsection applies and does not limit the plain meaning of the first sentence. The subsection is concerned with transactions "deemed" to be of "sale or return" and the first sentence is carefully drafted to apply to transactions which might not ordinarily be characterized as sales. Moreover, as a consignment the transaction falls within one of the examples stated in the second sentence. The Uniform Laws Comment on subsection (3) confirms our reading of that subsection.[2]

The judge found that Pettingell maintained a place of business in which it dealt in goods of the kind involved, under a name other than the name of the plaintiff. The plaintiff's attack on this finding is based on the claimed absence of evidence that Pettingell sold any General Electric large lamps in its own name without disclosing its agency. We think the finding is supported by the evidence that Pettingell sold other electrical merchandise including other items from the plaintiff. The statute in referring to "goods of the kind involved" does not restrict the relevant business to dealings in the precise kind of electrical goods. Pettingell was a wholesaler "buying and selling electrical, hardware and housewares merchandise." Its gross annual business ranged from $300,000 to $400,000, and 25% of this business was in "the sale and distribution" of General Electric large lamps. This large lamp business was its only consignment business.

General Electric put in evidence forms supplied Pettingell for use by the latter in the sale of large lamps. These forms state that they are "from" Pettingell as "serving agent for General Electric, consignor company." It is unnecessary for us to decide whether, if Pettingell sold and distributed large lamps only, these forms alone would show that Pettingell was not in business "under a name other

---

[2] American Law Inst. Uniform Commercial Code, 1962 Official Text with comments, § 2–326 (3), comment 2, p. 117: "Pursuant to the general policies of this Act which require good faith not only between the parties to the sales contract, but as against interested third parties, subsection (3) resolves all reasonable doubts as to the nature of the transaction in favor of the general creditors of the buyer. As against such creditors words such as 'on consignment' or 'on memorandum,' with or without words of reservation of title in the seller, are disregarded when the buyer has a place of business at which he deals in goods of the kind involved."

than the name of the person making delivery'' or whether, because of the concern of § 2-326 (3) with the rights of creditors, Miller need have only showed that "the consignee" did not completely identify "his business name with that of the consignor." Hawkland, Consignments Under the Uniform Commercial Code, *supra*.

The issue under subsection (3) thus becomes the narrow one whether the "goods" were "delivered to" Pettingell "for sale."

Under the agency contract Pettingell could sell directly to certain customers who bought for their own use or who bought in small volume for resale. Pettingell was also authorized to make deliveries under contracts of sale entered into between General Electric and purchasers and to "distribute" large lamps to other agents of General Electric. The latter were retailers under agency contracts with General Electric. The retail agents would procure the lamps from Pettingell, sell them as the plaintiff's agents and remit to Pettingell in accordance with the latter's invoices. The evidence showed that over a four year period 74% of Pettingell's "sales" were to subagents and 26% were direct sales other than those which General Electric negotiated. Under the contract in suit Pettingell would not have title to the large lamps at any time.

We need not determine the ruling required if Pettingell's sole authority had been to distribute lamps to subagents. Since Pettingell had authority to sell the lamps they were "delivered" to Pettingell "for sale." Section 2-326 (1) (b) does not, we think, require a different result. That section defines a "sale or return" as a sale where "goods are delivered primarily for resale." That subsection, read with § 2-326 (1) (a), might require us to determine in an appropriate case whether goods were delivered to a "consignee" primarily for his own use. It does not, however, exclude a consignment of goods to be sold or to be delivered to other agents as orders may require.

The parties have stipulated that in the event the final decision is for the defendant Miller, Miller in lieu of the return of the replevied items shall have judgment against the

plaintiff in the sum of $5,727 with interest at 6% a year from the date of the replevin writ and judgment for his costs.   The parties have also stipulated that as to Pettingell the entry shall be: Judgment for neither party; no further suit for the same cause of action.

The plaintiff's exceptions are overruled.   Judgments are to enter in accordance with the stipulation.

*So ordered.*