THE SUSSEN RUBBER CO., APPELLEE, *v.* HERTZ, TRUSTEE, APPELLANT.

(No. 29196—Decided June 26, 1969.)

*Messrs. Geraci & LaPerna,* for appellee.
*Messrs. Hertz & Kates,* for appellant.

ARTL, J.   This is an appeal on questions of law from a judgment and final order of the Cleveland Municipal Court against defendant, appellant herein, in the sum of $2,563.-85. The action arose out of plaintiff's petition for conversion which contended that defendant wrongfully took possession of goods owned by the plaintiff, which allegedly had a value of $2,347.11.

The facts indicate that, in February 1965, Hillcrest Auto Parts, a dealer in parts for automobiles, and Lee Motor Products, a supplier of such parts, entered into a discussion relative to the extension of credit by Lee to Hillcrest, which extension would be secured by a security interest in all the assets of Hillcrest, including any after-acquired property. Subsequently, Lee appointed defendant herein, Harlan Stone Hertz, as trustee, to be the secured party. Thereafter, the pertinent security agreement and accompanying financing statements were filed with both the Cuyahoga County Recorder and the Secretary

of State of Ohio. At the time the agreement was entered into, Lee admittedly knew that Hillcrest would have to acquire goods from other suppliers. This factor caused Lee to extend credit to Hillcrest initially in the sum of $15,000, and, further, to extend additional credit on open account to Hillcrest.

In March 1965, Hillcrest and plaintiff, Sussen Rubber Company, also entered into a written agreement, whereby plaintiff agreed to deliver certain goods to Hillcrest on consignment. About this time, a salesman for Lee was advised that Hillcrest was going to acquire goods from the plaintiff. Thereafter, plaintiff delivered goods to Hillcrest pursuant to the consignment agreement and also pursuant to unrelated outright sales. Although the documents in respect to all the goods delivered to Hillcrest were introduced into evidence by plaintiff and made part of the record, these documents refer to goods sold by the plaintiff to Hillcrest as well as goods consigned by plaintiff to Hillcrest.

At no time did plaintiff file any document with any filing officer in respect to the consignment, and at no time did plaintiff attempt to determine whether the defendant or anyone else had filed financing statements in respect to Hillcrest.

Subsequently, in August 1965, Hillcrest was in default under the security agreement with defendant as trustees. At that time officers of Lee were advised that some of the goods in the possession of Hillcrest were on consignment from plaintiff. Also, at that time, and according to defendant's uncontroverted testimony, the total obligations owed to Lee by Hillcrest, all of which were secured by all the assets of Hillcrest, including after-acquired assets, pursuant to the security agreement, were far in excess of $20,000.

Thereafter, the assets of Hillcrest were voluntarily turned over to the defendant, who, after public notice, sold them at public sale for the aggregate price of $20,000. After the giving of public notice, but prior to the sale, the plaintiff gave the defendant written notice of its alleged claim in the consigned goods.

**Three major issues are involved in the present case.**

The first relates to the effect of the after-acquired property feature contained in the security agreement between Hillcrest and Lee Motor Products. The second is whether the present situation is governed by the provisions of Section 1302.39, Revised Code. The third concerns the method used by the trial court to determine the amount of the judgment rendered.

The first issue to be considered is whether the after-acquired feature of the security agreement, involving Hillcrest and defendant as trustee, applied to plaintiff's property which subsequently came into the possession of Hillcrest.

It is agreed that the security agreement between Hillcrest and defendant was effective and executed on February 25, 1965, and that plaintiff's consignment agreement with Hillcrest, as well as the delivery of the goods in question, was accomplished after the effective date of same. Plaintiff readily admits that the Uniform Commercial Code completely recognizes the validity of an after-acquired property clause in a security agreement, but, nevertheless, strongly contends that the effectiveness of such a clause "is subject to certain limitations." Plaintiff points out that there are three basic prerequisites to the attachment or to the existence of any security interest. The first subsection of Section 1309.15, Revised Code (U. C. C. 9-204)—entitled, "When security interest attaches; after-acquired property; future advances"—sets out these specific requirements:

"(A) A security interest cannot attach until there is agreement, as defined in division (C) of Section 1301.01 of the Revised Code, that it attach and value is given and the debtor has rights in the collateral. * * *"

Subsection (C), which also pertains to the present problem, should be considered in conjunction with subsection (A) above:

"(C) Except as provided in division (D) of this section [not applicable to the instant case], a security agreement may provide that collateral, whenever acquired, shall secure all obligations covered by the security agreement."

The following excerpt from the official "Comment" to

Section 1309.15, Revised Code, indicates the reason for considering subsections (A) and (C) simultaneously:

"2. Divisions (A) and (C) read together make clear that a security interest arising by virtue of an after-acquired property clause has equal status with a security interest in collateral in which the debtor has rights at the time value is given under the security agreement. * * *. That is to say: the security interest in after-acquired property is not merely an 'equitable' interest; no further action by the secured party—such as the taking of a supplemental agreement covering the new collateral—is required. * * *"

Returning to the question at hand, it must be re-emphasized that only three things are necessary for a security interest to attach to after-acquired property. One, an agreement that the security interest attach must be entered into; two, value must be given; three, the debtor must have rights in the collateral.

Since it must be conceded that, initially, a security agreement was entered into in the present case between Hillcrest (the debtor) and defendant trustee (the creditor), the only remaining questions relate to whether "value" was given by defendant and whether the debtor had rights in the collateral obtained from plaintiff (Sussen Rubber Company) at the time defendant took possession thereof.

Considering the latter problem first, it appears that plaintiff's argument is based upon the premise that since "there was a pure consignment; therefore, Hillcrest Auto Parts, Inc., the debtor, acquired no 'rights' in the property since this term as used in the code refers to 'ownership rights'" (citing *In re American Merchandising Co.*, 136 F. Supp. 952, which, however, is inapplicable to the present case). The point which plaintiff attempts to make is that a creditor, such as defendant herein, cannot attach any consignment property which subsequently comes into a debtor's possession from a third party, because such property was not contemplated as coming within the provisions of Section 1309.15, Revised Code, pertaining to attachment of a security interest in after-acquired property. Thus, according to plaintiff's theory, only property which

is "owned" by a debtor and acquired after a security agreement has been entered into can later be subject to a creditor's claim, so as to comply with that feature of Section 1309.15, Revised Code, which requires that "the debtor has rights in the collateral." Such an interpretation of the above statute must be rejected.

The specific provisions of Section 1302.39, Revised Code, which may be looked to in determining the status of the consignment property in the instant case, dictate the conclusion that as far as creditors are concerned such property may be treated as if owned by the debtor.

As will be more fully enumerated hereafter, Section 1302.39, Revised Code, Subsection (C), provides that "where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business, the goods are deemed to be on sale or return." The fact that goods are deemed to be on "sale or return" is truly significant, because Subsection (B) of 1302.39, Revised Code, states unequivocally that such goods are subject to the claim of the dealer's creditors while in the dealer's possession. *General Electric Co.* v. *Pettingell Supply Co.* (1964), 347 Mass. 631, 199 N. E. 2d 326.

Thus, it is readily apparent that one of the main purposes of Section 1302.39, Revised Code, is to provide for the attachment of a third person's consignment property within a dealer's possession, by a creditor, and to permit the creditor to treat such property as if it were *owned* by the dealer.

In viewing the facts of the instant case, it is equally clear that all the necessary prerequisites of Section 1302.-39, Revised Code, above set out, were fully complied with. This determination, coupled with the fact that the appropriate features of Section 1309.15, Revised Code, also previously stated, were likewise fulfilled, requires the conclusion that the after-acquired property feature of the security agreement herein need not be limited so as to include only property in which the dealer acquired "ownership" rights.

There now remains plaintiff's second premise, concerning whether value was given by the defendant herein, which must be disposed of before a determination can be made as to whether "plaintiff's property" within the possession of Hillcrest was subject to defendant's claim according to Section 1309.15, Revised Code.

It is plaintiff's contention that "the evidence introduced at the time of trial clearly shows no new value was given by the defendant to the debtor, [which would] thereby * * * permit * * * the after-acquired feature of the note to take effect." Plaintiff, however, erroneously construes the meaning of the term "value" as applied within Section 1309.15, Revised Code. In opposition to plaintiff's instant assertion stands Section 1309.06, Revised Code (U. C. C. 9-108),—entitled, "When after-acquired collateral not security for antecedent debt"—which, as indicated by the official Code "Comment" to Section 1309.15, Revised Code, defines when a security interest in after-acquired collateral is not security for an antecedent debt, but, rather, is considered as new and sufficient consideration. Section 1309.06, Revised Code, reads as follows:

"Where a secured party makes an advance, incurs an obligation, releases a perfected security interest, or otherwise gives new value which is to be secured in whole or in part by after-acquired property, his security interest in the after-acquired collateral shall be deemed to be taken for new value and not as security for an antecedent debt if the debtor acquires his rights in such collateral either in the ordinary course of his business or under a contract of purchase made pursuant to the security agreement within a reasonable time after new value is given."

The facts in the instant case fall directly within the above Code section. As previously mentioned, Hillcrest was extended credit in the amount of $15,000 by Lee at the time of its initial agreement in February 1965. Certainly no one could deny that Lee thus incurred an obligation and gave value at that time. It is also quite clear that, according to the terms of the February agreement, Lee's obligation was to be secured, at least in part, by property which came into Hillcrest's possession after such agreement date. Finally, nowhere has it been seriously contended that Hill-

crest acquired "rights in such collateral" by any means other than "in the ordinary course of [its] * * * business."

Again, the official Code "Comment" spells out and re-emphasizes the requirements of the above section:

"Two tests must be met under this section [1309.06] for an interest in after-acquired property to be one not taken for an antecedent debt. First: the secured party must, at the inception of the transaction, have given new value in some form. Second: the after-acquired property must come in either in the ordinary course of the debtor's business or as an acquisition which is made under a contract of purchase entered into within a reasonable time after the giving of new value and pursuant to the security agreement. * * *"

As previously specified, no one can deny that at the inception of the contract "new value" was given. Likewise, it is clear that the property of Sussen Rubber, which was in the possession of Hillcrest on "pure consignment," was so acquired in the ordinary course of Hillcrest's (debtor's) business.

Thus, it must be concluded that plaintiff's property became subject to the after-acquired property feature of the security agreement between Hillcrest and defendant, and, as previously determined, such property is subject to the claims of the buyer's creditors while in the buyer's possession. (Section 1302.39 (B), Revised Code.) See, *General Electric Co.* v. *Pettingell Supply Co.* (1964), 347 Mass. 631, 199 N.E. 2d 326; *Guardian Discount Co.* v. *Settles* (1966), 114 Ga. App. 418, 151 S. E. 2d 530; *In re Mincow Bag Co. Inc.* (1968), 29 App. Div. 2d 400, 288 N. Y. S. 2d 364. We conclude, and therefore hold, that the trial court was in error in its ruling in favor of the plaintiff in this regard and that such error was prejudicial to the defendant.

In order to confront the second issue in the instant case, the pertinent parts of Section 1302.39, Revised Code, are set out as follows:

"(C) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other

than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business, the goods are deemed to be on sale or return. The provisions of this division are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as 'on consignment' or 'on memorandum.' However, this division is not applicable if the person making delivery:

"(1) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

"(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

"(3) complies with the filing provisions of Sections 1309.01 to 1309.50, inclusive, of the Revised Code."

As previously stated, subsection (B) of Section 1302.-39, Revised Code, provides that "* * * goods held on sale or return are subject * * * [to the claim of the buyer's creditors] * * * while in the buyer's possession." Thus, should goods be in the possession of a dealer by way of consignment and should the remaining provisions of Section 1302.-39, Revised Code, be fulfilled, the owner of such goods (plaintiff in the instant case) can only escape the claim of dealer's creditors through application of one of the three exceptions to subsection (C) previously enumerated. It is conceded that neither exception number one nor number three has any relevance herein. No "signs" were posted, nor were the applicable statutory "filing provisions" complied with, by plaintiff herein.

It is, therefore, apparent that defendant must succeed, unless plaintiff brings itself within the aforementioned exception of Section 1302.39 (C) (2) Revised Code. Has the plaintiff (Sussen Rubber) established Hillcrest Auto Parts as "generally known by [its] * * * creditors to be substantially engaged in selling the goods of others"? The trial court has held that it did. A review of the record. however, discloses evidence quite to the contrary. For example, Howard Cohen, president of Hillcrest, stated the following upon cross-examination:

"Q. Did you receive goods on consignment in your store during this same period from sources other than Sussen Rubber Company? A. No.

"Q. They were the only ones with whom you received goods on consignment? A. Yes.

"Q. Who were your other suppliers? A. Other suppliers?

"Q. Yes. A. Cleveland Cycle, Cleveland Warehouse, Donley's Tools. Those I would say were probably the major ones.

"Q. Did any of them sell you on consignment? A. No."

The record discloses no evidence whatsoever, which establishes the fact that any other of Hillcrest's creditors knew it to be "substantially engaged in selling the goods of others."

Although no case law has been cited to support its position, plaintiff argues that since one of Lee Motor's agents was informed that Hillcrest intended to secure other merchandise on a consignment basis from plaintiff, and since defendant "obviously knew of Hillcrest's lack of sufficient assets to open a retail outlet," therefore, the conclusion necessarily follows that defendant was precluded from attaching "plaintiff's merchandise" within the possession of Hillcrest, according to Section 1302.39, Revised Code. Such reasoning cannot be accepted. First of all, assuming that the sales representative of Lee Motor Products is also the "agent" of the defendant, it does not matter that such "agent" may have known Hillcrest's intention to deal on a consignment basis with some other supplier. It must be emphasized that the only question presented in the instant case by Section 1302.39 (C) (2), Revised Code, is whether "* * * the person conducting the business [Hillcrest] is generally known by his creditors to be substantially engaged in selling the goods of others." To say that defendant's knowledge of the fact that Hillcrest was dealing with one other supplier on a consignment basis constituted knowledge by Hillcrest's creditors that Hillcrest was "substantially engaged in selling the goods of others" appears to be completely inconsistent with the clear meaning of Section 1302.39, Revised Code.

Although no Ohio authorities have been cited, deci-

sions in foreign jurisdictions were found which have dealt with the problem. One of these cases is *Guardian Discount Co.* v. *Settles*, 114 Ga. App. 418, which involved a situation where an owner of automobiles gave possession of same to a dealer, for sale to the public. In that case, where the dealer's secured creditor sought to attach such "consignment goods," the same issue is presented, namely, whether the dealer was generally known by his creditors to be substantially engaged in selling the goods of others. As likewise noted therein, the other two "statutory exceptions" did not apply. Thus, in response to the original owner's contention that his goods came under the remaining statutory exception, the court in *Guardian Discount Co.*, at page 422, stated the following:

"While this court cannot agree with the official comment of the permanent editorial board for the Uniform Commercial Code that 'substantially engaged in selling the goods of others' means 'primarily' engaged in selling the goods of others, yet evidence of isolated sales for one creditor or of what the dealer knows of his own business or even what the supplier of the goods knows about the merchandise delivered to such dealer by him is not sufficient to show that the dealer's creditors generally know he is substantially engaged in selling the goods of others. * * *"

Another such case is the New Jersey Appellate Court opinion—*Vonins, Inc.*, v. *Raff* (1968), 101 N. J. Super. 172, 243 A. 2d 836—where the issue whether the person conducting the business was "generally known by his creditors to be substantially engaged in selling the goods of others" was also presented. The court therein eventually concluded that the trial court had erred in holding in favor of compliance with the above exception in that the uncontroverted evidence had established that, although some of the dealer's creditors, approximately ten in number, may have known of its consignment agreements, some 55 to 60 of its general creditors did not have such knowledge. Thus, it was held that the consignor could not be permitted to hide behind the shield which would have been created had the dealer been generally known by his creditors to be substantially engaged in selling the goods of others.

We conclude, and therefore hold, that the trial court was in error in its ruling and that such error was prejudicial to the defendant.

The final issue to which we address ourselves relates to the basis of the trial court in determining the amount of the final judgment.

The court in its findings of fact and conclusions of law stated:

"The defendant filed an answer denying the allegations of the petition, but admitted on or about the 19th day of October 1965, plaintiff made an official demand upon the defendant for the said personal property, the reasonable value of which was $2,347.11, and that defendant refused to return said property claiming the right to the property as a secured creditor of Hillcrest Auto Parts, Inc."

There is no question, as indicated by the court, that defendant, having denied the allegations of plaintiff's petition, put in issue the reasonable value of the property claimed by plaintiff.

The allegation of the answer with respect to the admission of an official demand by plaintiff is as follows:

"On or about October 19, 1965, the plaintiff made a demand upon the defendant to turn over to plaintiff unspecified merchandise which the plaintiff claimed that plaintiff had 'delivered to Hillcrest Auto Parts under consignment.' Defendant admits that defendant refused to comply with said demand and that defendant then and there claimed the right to property so delivered as a secured creditor of Hillcrest Auto Parts, Inc., an Ohio Corporation."

The petition of the plaintiff alleges the reasonable value of property demanded to be $2,347.11. That was its claim. Although admitting that a demand was made and refused, the defendant's answer does not admit that the reasonable value was as claimed by plaintiff, particularly in view of the fact that the demand was for unspecified merchandise; and, there being a denial of the plaintiff's allegation as to reasonable value, it was incumbent upon the court to hear evidence of the value and, from the evidence, determine the fact.

A careful review of the record shows no evidence of the reasonable value of the goods allegedly converted by the present defendant and that there is definite confusion as to the identification of the precise goods involved herein. This factor is emphasized by the existence of the invoices admitted into evidence, which represent all the goods ever delivered to Hillcrest on consignment, some of which had been sold by Hillcrest prior to the time of defendant's possession of Hillcrest's goods. In addition, the testimony indicates that the above invoices may have contained goods purchased by Hillcrest rather than goods received exclusively by way of consignment. Finally, to further point out the speculative features of the evidence concerning the value and identity of the goods involved in the instant case, the following comment of plaintiff's counsel at the time of trial is significant:

"Mr. Geraci: We will assure the court that we do not want to waste your time about figures. That is the problem. We will be glad to sit down and discuss this. In other words, I do not want to be burdening you with something that is just a matter of arithmetic."

As indicated by the record, however, the matter was never discussed further.

The conclusion is inescapable that such determination by the court was without any evidential foundation. We, therefore, hold that this was error and prejudicial to defendant. The judgment of the trial court is reversed for the reasons stated, and final judgment is entered for defendant.

*Judgment reversed.*

SILBERT, C. J., and CORRIGAN, J., concur.