476 P.2d 304 (1970)
The AMERICAN NATIONAL BANK OF DENVER, a National Banking Association, Plaintiff in Error,
v.
The FIRST NATIONAL BANK OF GLENWOOD SPRINGS, Colorado, a National Banking Association, and Merrill Construction, Incorporated, a Colorado corporation, Defendants in Error.
No. 70-172. (Supreme Court No. 23960.)
Colorado Court of Appeals, Div. II.
September 9, 1970.
Rehearing Denied October 6, 1970.
*306 Dawson, Nagel, Sherman & Howard, John W. Low, David R. Johnson, Denver, for plaintiff in error.
Delaney & Balcomb, Mincer, Larson & Hartert, Glenwood Springs, for defendants in error.
Selected for Official Publication.
*307 ENOCH, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
This appeal arises out of a replevin action initiated by The American National Bank of Denver (Bank) against Fincham Equipment Co., Inc. (Fincham), to recover possession of several heavy construction machines. Merrill Construction, Inc. (Merrill) and The First National Bank of Glenwood Springs (First National) jointly intervened. Merrill claimed an ownership interest subject to First National's claim of a chattel mortgage interest in a crane.
The crane was originally purchased in 1965 from Fincham, a dealer in both new and used heavy construction equipment. One of the principal issues in the trial court was whether Merrill, Inc., or Merrill as an individual, doing business under the trade name, Merrill Construction Co., took title to the crane at the time of purchase. The trial court found that Merrill, Inc., purchased the crane. The crane was delivered back to Fincham by Merrill during August or September of 1966, for the express purpose of selling it to a buyer which Fincham had procured. This anticipated sale was not consummated and the crane was left in Fincham's yard with other equipment it had for sale. Apparently, First National, the holder of a chattel mortgage on the crane, was not aware that the crane had been removed to Fincham's lot. The crane remained there until replevied by the Bank on March 21, 1967.
The Bank had been providing floor plan financing for Fincham for several years. On July 1, 1966, the effective date of the Uniform Commercial Code, the Bank filed a financing statement covering equipment on Fincham's lot. On December 5, 1966, Fincham gave the Bank a security interest in its current and after-acquired inventory of machines by executing and delivering to the Bank a security agreement. Fincham advised the Bank on December 12, 1966, that it had purchased the crane as part of its inventory and requested that this machine be included under its floor plan security agreement.
John M. Fincham, the owner and operator of Fincham Equipment Co., Inc., died on March 16, 1967. At that time, his company was in default on its indebtedness to the Bank. Consequently, on March 21, 1967, the Bank initiated a replevin action to recover the crane and other pieces of construction equipment which the Bank claimed as collateral for its loan to Fincham. Merrill and First National filed a motion to intervene in this action. On May 29, 1967, the trial court entered judgment for the Bank against Fincham. Thereafter, the trial court permitted Merrill and First National to intervene over objection by the Bank. At the time of trial, the outstanding balance on Merrill's loan from First National was $4,250, plus interest. The trial court held the interest of the Bank in the crane to be junior to that of Merrill and First National. Judgment was entered against the Bank jointly in favor of Merrill and First National for $14,000, the determined value of the crane, plus interest and costs.

I
The Bank claims that the trial court erred by finding that the crane was acquired from Fincham by Merrill, Inc., rather than by Mr. Dycell Merrill under his trade name, Merrill Construction Co. We do not agree with this assignment of error. There was conflicting evidence presented at trial as to title to the crane. The trial court determined this issue in favor of the intervenors. Where there is sufficient evidence in the record to sustain the trial court's findings, the reviewing court, on writ of error, is bound by the trial court's determination even though it is possible for reasonable men to arrive at a different conclusion based on the same facts. Whatley v. Wood, 157 Colo. 552, 404 P.2d 537.

*308 II
The Bank's second assignment of error is that the trial court erred in holding that First National had a chattel mortgage interest in the crane enforceable against third parties. The Bank bases this claim on the supposition that as of the date of the chattel mortgage, Merrill, Inc. did not own the crane and that the chattel mortgage did not contain an after-acquired property clause which might have later passed a chattel mortgage interest to First National. The concept of after-acquired property does not apply here. Where a mortgage is given in contemplation of the immediate acquisition of the property, it cannot be said to be a mortgage of after-acquired property. We hold that a simultaneous transaction is not necessary in a purchase money chattel mortgage as long as it is all a part of the same transaction and is recognized as such by the parties.
Assuming the validity of the chattel mortgage, the Bank then contends that it is inoperative against third parties because it was recorded in the wrong county. We find no merit to this contention.
The crane was sold by Fincham to Merrill on September 13, 1965. At the time of sale, the parties agreed that delivery was to be made after Fincham performed some minor repairs on the crane. These repairs were made and delivery took place around October 15, 1965. The note and chattel mortgage dated September 21, 1965, were recorded in Garfield County (the situs of Merrill, Inc.) on September 28, 1965. The Bank contends that the recording should have been made in Adams County, the actual situs of the crane on the date of recording. It relies on C.R.S. 1963, 21-1-4, which was in effect on the date of recording. This statute provides that a chattel mortgage instrument should be recorded in the county "where the mortgaged property is situated."
Stitt v. Spengel House Furnishing Co., 58 Colo. 559, 146 P. 770, is controlling and succinctly states:
"Where, as here, mortgaged property is sold in one county, to be forthwith delivered to the place of business of a purchaser in another county, and is delivered there, its situs for the purposes of record of a mortgage placed on it is in the county to which it is so delivered. Any other construction would defeat the purpose and object of the statute as to notice, and thus afford opportunity for the perpetration of fraud and deception, to prevent which was the primary object of the act."
The First National had no knowledge that the crane was redelivered to Fincham in Adams County for resale. The First National continued to have a valid security interest even after the passage of the Code as provided for in C.R.S. 1963, XXX-XX-XXX (2)[1]
Thus, we hold that the judgment as to the interest of the First National be affirmed.

III
Regarding the judgment in favor of Merrill, the Bank claims that the trial court erred in not applying C.R.S. 1963, XXX-X-XXX[2] (hereinafter referred to as "2-326"). *309 The trial court held that the transaction in this case was not a "sale or return" under 2-326. While we agree that the transaction did not constitute a "sale or return" under 2-326(1), we hold that 2-326(3) was applicable and should have been applied.
Under the pre-Code common law majority rule, the concept of title dictated that a bailee or consignee had no right to hypothecate the property. Hence, a consignee's creditors would have had no claim against the consignor if the consignee's assets were inadequate to satisfy their respective claims. This rule placed a creditor of the consignee who relied on the consignee's possession in an unfavorable position. Section 2-326 of the Code was enacted to alleviate this problem. Its purpose is to allow the attachment of a third person's consignment property within a dealer's possession, by a creditor of the dealer and to permit the creditor to treat such property as if it were owned by the dealer. Sussen Rubber Co. v. Hertz, 19 Ohio App.2d 1, 249 N.E.2d 65. To prevent the complete shift of risk to the consignor, the Code provides three ways in which the consignor can protect his interest from the consignee's creditors. C. R.S. 1963, XXX-X-XXX(3), (a), (b), (c).
It is noted, however, that Colorado did not follow the pre-Code majority rule as to the relative rights of the consignor and the creditor of his consignee. In a similar pre-Code replevin case, the Colorado Supreme Court held that one who placed his automobile with a used car dealer for sale under consignment may not assert his ownership against a judgment creditor of the dealer who levied upon the car to satisfy his judgment while it was in the dealer's possession. Zuckerman v. Guthner, 105 Colo. 176, 96 P.2d 4. This decision is in accord with the concept of apparent title of 2-326 which replaced the concept of title under the pre-Code majority rule.
The trial court held that the transaction between Fincham and Merrill was not a "sale or return". We agree that the facts of this case do not qualify this transaction as a "sale or return" under 2-326(1). "Sale or return" under subsection (1) is not defined in the Code. However, a "sale or return" transaction is not a new concept in Colorado law. A "sale or return" is a contract for the sale or goods whereby title passes immediately to the buyer subject to his option to rescind or return the goods if he does not resell them. See, Uniform Sales Act, C.R.S. 1963, 121-1-19, rule 3 and Ferry-Morse Seed Co. v. Board of County Commissioners, 126 Colo. 426, 250 P.2d 1003. Section 2-326(2) provides that goods held on sale or return are subject to the claims of the buyer's creditors while such goods are in the buyer's possession. The exceptions set forth in subsection (3), (a), (b), (c) apply only to transactions covered by subsection (3) and do not apply to a sale or return under subsection (1).
Consignment transactions (i. e., where title does not pass to the consignee) are covered by subsection (3), which deems such a transaction to be a sale or return; *310 therefore, subject to the claims of the consignee's creditors, unless one of the three exceptions under 2-326(3) is established. Since the transaction in this case was a consignment, we hold that 2-326(3) is applicable and that it was error for the trial court not to have applied it. General Electric Co. v. Pettingell Supply Co., 347 Mass. 631, 199 N.E.2d 326; Guardian Discount Co. v. Settles, 114 Ga.App. 418, 151 S.E.2d 530; Sussen Rubber Co. v. Hertz, supra.

IV
The trial court further found, assuming that the provisions of 2-326 did apply that "Fincham was substantially engaged in selling goods of others * * *" On the basis of this finding, the trial court concluded that exception 2-326(3) (b) was applicable. This finding of fact does not support the trial court's conclusion because of the absence of a finding that Fincham was generally known by his creditors to be substantially engaged in selling the goods of others, nor is there sufficient evidence in the record to support such a finding. See, Vonins Inc. v. Raff, 101 N.J.Super. 172, 243 A.2d 836; Guardian Discount Co. v. Settles, supra; Sussen Rubber Co. v. Hertz, supra.

V
The Bank also claims that the trial court erred in ruling that 2-326 operates only for the protection of general creditors and not for the protection of secured creditors. The trial court based this finding on Comment 2 of 2-326 which states:
"Pursuant to the general policies of this Act which require good faith not only between the parties to the sales contract, but as against interested third parties, subsection (3) resolves all reasonable doubts as to the nature of the transaction in favor of the general creditors of the buyer."
Section 2-326(3) does not distinguish between general and secured creditors. It refers only to "creditors". The term "creditor" is defined in C.R.S.1963, XXX-X-XXX(12), and this definition is controlling:
"`Creditor' includes a general creditor, a secured creditor, a lien creditor, and any representative of creditors, including an assignee for the benefit of creditors, a trustee in bankruptcy, a receiver in equity, and an executor or administrator of an insolvent debtor's or assignor's estate." (Emphasis added)
The Preface to the Uniform Commercial Code (as enacted by the Colorado Legislature) states:
"The official comments, the references contained in these comments and the cross references are nonstatutory and the inclusion of this nonstatutory matter is for the purpose of information only. No presumption or impliction of legislative intent should be drawn therefrom."
The trial court was in error when it ruled that the provisions of 2-326 applied only to general creditors.

VI
The Bank claims that the trial court erred by denying its motion to dismiss the claim of the intervenors made at trial after the intervenors had rested their case. The trial court denied the motion because it determined the intervenors had presented a prima facie case. The Bank relies on Teodonno v. Bachman, 158 Colo. 1, 404 P.2d 284, and argues that the correct test for determining the issues raised by a motion to dismiss in a trial without jury is whether a judgment in favor of the defendant is justified on the plaintiff's evidence and not whether plaintiff has presented a prima facie case. We agree that the court applied the wrong test, but hold that the failure to dismiss as to the First National did not result in reversible error. Although an improper standard may have been applied by the trial court, had it applied the right rule, the result would have been the same. The evidence presented by the First National was sufficient to justify a judgment for the First National. We affirm *311 the denial of the Bank's motion to dismiss as to the First National.
However, as to Merrill, we hold that the facts as presented, taken in conjunction with the law as correctly applied, dictate that Merrill had no cause of action and that the trial court erred in not dismissing its claim. Ordinarily, if findings are supported by competent evidence, they will not be disturbed by the reviewing court, but if erroneous principles of law were applied to facts, judgment rendered on such facts will not be upheld on review. See, International Trust Co. v. Palisade Light, Heat & Power Co., 60 Colo. 397, 153 A. 1002.

VII
The Bank claims the trial court erred by permitting the intervenors to amend their pleadings at the close of the evidence to include a claim of estoppel against the Bank, and by ruling that the intervenors had established a claim of estoppel against the Bank. We agree that estoppel is not a proper issue under the facts of this case.

VIII
As a final assignment of error, the Bank claims that the trial court erred in permitting the intervention after judgment had been entered in the underlying replevin action and by permitting the intervenors' claims to be heard in Adams County rather than Denver County. Further, the Bank claims that it had a right pursuant to 12 U.S.C. § 94 to have all actions against it held in the County in which it is located.
We find no merit in either argument. The intervenors filed their motion to intervene before judgment was entered. The fact that the default judgment on behalf of the Bank was entered against Fincham before the court's determination of the intervenors' motion, did not cause the court to lose jurisdiction in the case. The trial court properly permitted the intervention by the intervenors under R.C.P.Colo. 24.
We also do not agree with the assertion by the Bank that it had a right to have this action heard in Denver County. We find the authorities cited by the Bank distinguishable in that they all deal with situations in which a national banking institution had some action taken against it. In this case, the Bank was the moving party. The Bank chose the venue (i. e., the District Court of Adams County) and it cannot complain about the determination of all issues properly before that court. See, Annot., 1 A.L.R.3d 904.
We hold that First National properly protected its chattel mortgage interest by filing under the Chattel Mortgage Act and that Merrill's interest is defeated by its failure to conform to the provisions of C.R.S.1963, XXX-X-XXX.
The judgment of the trial court as to First National is affirmed in the amount of $4,250, plus interest and its share of the costs, and the judgment as to Merrill is reversed. The case is hereby remanded to the trial court with directions to dismiss the complaint of Merrill with prejudice.
COYTE and PIERCE, JJ., concur.
NOTES
[1] "(2) Transactions validly entered into prior to the effective date of this chapter and the rights, duties, and interests flowing from them remain valid thereafter and may be terminated, completed, consummated, or enforced as required or permitted by any statute or other law amended or repealed by the enactment of this chapter as though such repeal or amendment had not occurred."
[2] "Sale on approval and sale or return consignment sales and rights of creditors.

 (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:
(a) A `sale on approval' if the goods are delivered primarily for use; and
(b) A `sale or return' if the goods are delivered primarily for resale.
(2) Except as provided in subsection (3) of this section, goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.
(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then, with respect to claims of creditors of the person conducting the business, the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as `on consignment' or `on memorandum'; however, this subsection is not applicable if the person making delivery:
(a) Complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign; or
(b) Establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of other; or
(c) Complies with the filing provisions of the article on secured transactions (article 9 of this chapter)."