476 P.2d 281 (1970)
The AMERICAN NATIONAL BANK OF DENVER, a National Banking Association, Plaintiff in Error,
v.
Wilbur CHRISTENSEN, d/b/a Wilbur Christensen Construction Co., Defendant in Error.
No. 70-173. (Supreme Court No. 23927.)
Colorado Court of Appeals, Division II.
September 9, 1970.
Rehearing Denied October 6, 1970.
*283 Dawson, Nagel, Sherman & Howard, John W. Low, David R. Johnson, Denver, for plaintiff in error.
Calkins, Kramer, Grimshaw & Carpenter, Richard L. Harring, Denver, for defendant in error.
Selected for Official Publication.
ENOCH, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
This case involves the competing claims by Wilbur Christensen, d/b/a Wilbur Christensen Construction Co., (Christensen) and The American National Bank of Denver (Bank) over two pieces of construction equipment.
In July, 1966, Christensen delivered two Model TS-14 Euclid Scrapers (Scrapers) to Fincham Equipment Co. (Fincham), a dealer in both new and used heavy construction equipment. The original purpose of the delivery was for Fincham to sell the scrapers for Christensen. The scrapers were left in Fincham's yard with the other equipment that it had for sale until they were replevied by the Bank.
The Bank had been providing floor plan financing for Fincham for several years. On July 1, 1966, the effective date of the Uniform Commercial Code, the Bank filed a financing statement covering equipment on Fincham's lot. On December 5, 1966, Fincham gave the Bank a security interest in its current and after-acquired inventory of machines by executing and delivering to the Bank a security agreement. Fincham advised the Bank that it had purchased the scrapers as part of its inventory and requested that these machines be included under its floor plan security agreement. The Bank verified that Fincham had possession of the scrapers.
John M. Fincham, the owner and operator of Fincham Equipment Co., died on March 16, 1967. At that time, his company was in default on its indebtedness to the Bank. Consequently, on March 21, 1967, the Bank initiated a replevin action to recover the scrapers and other pieces of construction equipment which the Bank claimed as collateral for its loan to Fincham. Christensen filed a motion to intervene on April 5, 1967. On May 29, 1967, the trial court entered judgment for *284 the Bank against Fincham. Thereafter, the trial court permitted Christensen to intervene over objection of the Bank and subsequently held the interest of the Bank in the scrapers to be junior to that of Christensen. Judgment was entered against the Bank in favor of Christensen for $44,000, the determined value of the scrapers, plus interest and costs.

I
The Bank contends that the trial court erred by permitting Christensen's claims to be heard in Adams County, rather than Denver County. It relies on 12 U.S.C. § 94 which has been interpreted to mean that a national banking institution is entitled to have a litigation against it heard in the county of its location. We find no merit in this argument.
The authorities cited by the Bank are distinguishable and do not apply in this case in that they all deal with situations in which a national banking institution had some action initiated against it. In this case, the Bank was the moving party. The Bank chose the venue (i. e., the District Court of Adams County) and it cannot complain about the determination of all issues properly before that court. See, Annot., 1 A.L.R.3d 904.

II
The record indicates that after delivery of the scrapers to Fincham, Christensen was in need of a compactor. Fincham claimed that he knew where to locate such a machine. The parties then discussed a trade whereby Christensen was to give up his scrapers which the parties valued at $52,000. In return, Fincham was to give Christensen a compactor worth $38,500, plus $13,500 cash. This proposal was not carried out because Fincham did not have enough cash to purchase the compactor from his supplier. To overcome this obstacle, Christensen, upon Fincham's request, executed a promissory note and a security agreement whereby Christensen purportedly purchased the compactor from Fincham. With Christensen's knowledge, Fincham sold the chattel paper to the Bank. The proceeds enabled Fincham to acquire the compactor and, in turn, give it to Christensen.
The Bank alleges the trial court erred in not accepting its contention that the trade-in proposal represented an absolute sale of the scrapers by Christensen to Fincham. Had the trial court done so, Christensen would not have had any interest in the scrapers when they were replevied by the Bank. We do not agree. The evidence merely indicated that the parties had entered into an agreement which was not consummated. Where there is sufficient evidence in the record to sustain the trial court's findings, the reviewing court, on writ of error, is bound by the trial court's determination even though it is possible for reasonable men to arrive at a different conclusion based on the same facts. Whatley v. Wood, 157 Colo. 552, 404 P.2d 537.

III
The Bank's third assignment of error is that the trial court should have granted the Bank's motion for new trial based upon newly discovered evidence. The evidence upon which the Bank relies was Christensen's post-trial deposition in which he stated that Fincham had sent him a check in the amount of $13,500. Christensen attempted to cash this check but it was never paid.
To sustain a motion for new trial on the ground of newly discovered evidence, it must be established that the evidence could not have been discovered in exercise of reasonable diligence and produced at trial, that the evidence is material to some issue before the court under the pleadings, and that if received, it would probably change the result. Kennedy v. Bailey, Colo., 453 P.2d 808. Whether to grant a new trial because of newly discovered evidence is a matter that lies within the sound discretion of the trial court. Gomez v. Miller, Colo., 459 P.2d 126. We hold that it was not error for the court to have dismissed the motion for new trial *285 based on the ground of newly discovered evidence.

IV
The Bank claims that the trial court erred in not applying C.R.S.1963, XXX-X-XXX[1] (hereinafter referred to as "2-326") to this case. In its findings of fact, the trial court found that when the original trade-in agreement was rescinded, Christensen left the scrapers with Fincham and gave him the authority to sell them.
The trial court held that the transaction between Fincham and Christensen was not a "sale or return". We agree that the facts of this case do not qualify this transaction as a "sale or return" under 2-326(1). "Sale or return" under subsection (1) is not defined in the Code. However, a "sale or return" transaction is not a new concept in Colorado law. A "sale or return" is a contract for the sale of goods whereby title passes immediately to the buyer subject to his option to rescind or return the goods if he did not resell them. See, Uniform Sales Act, C.R.S. 1963, 121-1-19, rule 3 and Ferry-Morse Seed Co. v. Board of County Commissioners, 126 Colo. 426, 250 P.2d 1003. Section 2-326(2) provides that goods held on sale or return are subject to the claims of the buyer's creditors while such goods are in the buyer's possession. The exceptions set forth in subsection (3) (a), (b), (c) apply only to transactions covered by subsection (3) and do not apply to a sale or return under subsection (1).
Consignment transactions (i. e., where title does not pass to the consignee) are covered by subsection (3), which deems such a transaction to be a sale or return; therefore, subject to the claims of the consignee's creditors, unless one of the three exceptions under 2-326(3) is established. Since the transaction in this case was a consignment, we hold that 2-326(3) is applicable and that it was error for the trial court not to have applied it. General Electric Co. v. Pettingell Supply Co., 347 Mass. 631, 199 N.E.2d 326; Guardian Discount Co. v. Settles, 114 Ga.App. 418, 151 S.E.2d 530; Sussen Rubber Co. v. Hertz, 19 Ohio App.2d 1, 249 N.E.2d 65.

V
The trial court further found, assuming that the provisions of 2-326 did apply that "Fincham was substantially engaged in selling goods of others * * *" On the basis of this finding, the trial court concluded that exception 2-326(3) (b) was applicable. This finding of fact does not support the trial court's conclusion because of the absence of a finding that Fincham was generally known by his creditors to be substantially engaged in selling *286 the goods of others, nor is there sufficient evidence in the record to support such a finding. See Vonins, Inc. v. Raff, 101 N.J. Super. 172, 243 A.2d 836; Guardian Discount Co. v. Settles, supra; Sussen Rubber Co. v. Hertz, supra.

VI
The Bank also claims that the trial court erred in ruling that 2-326 operates only for the protection of general creditors and not for the protection of secured creditors. The trial court based this finding on Comment 2 of 2-326, which states:
"Pursuant to the general policies of this Act which require good faith not only between the parties to the sales contract, but as against interested third parties, subsection (3) resolves all reasonable doubts as to the nature of the transaction in favor of the general creditors of the buyer."
Section 2-326(3) does not distinguish between general and secured creditors. It refers only to "creditors". The term "creditor" is defined in C.R.S.1963, XXX-X-XXX(12) and this definition is controlling:
"`Creditor' includes a general creditor, a secured creditor, a lien creditor, and any representative of creditors, including an assignee for the benefit of creditors, a trustee in bankruptcy, a receiver in equity, and an executor or administrator of an insolvent debtor's or assignor's estate." (Emphasis added)
The Preface to the Uniform Commercial Code (as enacted by the Colorado Legislature) states:
"The official comments, the references contained in these comments and the cross references are nonstatutory and the inclusion of this nonstatutory matter is for the purpose of information only. No presumption or implication of legislative intent should be drawn therefrom."
The trial court was in error when it ruled that the provisions of 2-326 applied only to general creditors.

VII
The Bank claims that the trial court further erred by ruling that the Bank was estopped to assert its claim to the scrapers because of its method of dealing and its failure to ascertain the true status of title. We agree with this assignment of error. The maxim that "Equity follows the law" applies here. Where a legal right is clearly established, the equitable doctrine of estoppel cannot be used to circumscribe that right. In re Scholtz-Mutual Drug Co., D.C., 298 F. 539. The effect of this principle is reinforced inasmuch as the Bank made no misrepresentation upon which Christensen relied to his detriment.

VIII
Finally, the Bank claims the trial court erred by denying the Bank's motion to dismiss Christensen's claims made by the Bank at trial after Christensen had rested. We agree with this assignment of error and hold that the facts as presented, taken in conjunction with the law as correctly applied, dictate that Christensen had no cause of action and that the trial court erred in not dismissing his claim. Ordinarily, if findings are supported by competent evidence, they will not be disturbed by the reviewing court, but if erroneous principles of law were applied to the facts, judgment rendered on such facts will not be upheld on review. See, International Trust Co. v. Palisade Light, Heat & Power Co., 60 Colo. 397, 153 P. 1002.
We hold that Christensen's interest in the scrapers was defeated by his failure to conform to the provisions of C.R.S. 1963, XXX-X-XXX. The judgment of the trial court is hereby reversed and the case is remanded to the trial court with directions to dismiss Christensen's complaint with prejudice.
COYTE and PIERCE, JJ., concur.
NOTES
[1] "Sale on approval and sale or return consignment sales and rights of creditors. (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:

(a) A `sale on approval' if the goods are delivered primarily for use; and
(b) A `sale or return' if the goods are delivered primarily for resale.
(2) Except as provided in subsection (3) of this section, goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.
(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then, with respect to claims of creditors of the person conducting the business, the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as `on consignment' or `on memorandum'; however, this subsection is not applicable if the person making delivery:
(a) Complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign; or
(b) Establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others; or
(c) Complies with the filing provisions of the article on secure transactions (article 9 of this chapter)."