500 P.2d 1148

**NATIONAL CAR RENTAL, an Arizona corporation, Appellant,**

v.

**Norman FOX, dba Fox Motors, Appellee.**

**No. I CA–CIV 1814.**

Court of Appeals of Arizona, Division 1.

Sept. 14, 1972.

Rehearing Denied Nov. 1, 1972.

Hill & Savoy by John P. Otto, Phoenix, for appellant.

Wilkinson & Quarelli by O. J. Wilkinson, Jr., Phoenix, for appellee.

KRUCKER, Chief Judge.

This appeal is concerned with priority rights in a 1967 Cadillac and a 1968 Buick as between the plaintiff-appellee, Norman Fox (hereinafter referred to as plaintiff) and defendant-appellant, National Car Rental Corporation (hereinafter referred to as defendant).

Facts relevant to this determination arise out of the circumstances of the transfer of these two automobiles in December, 1968, by plaintiff to River Ranch Sales Corporation (hereinafter referred to as River Ranch) and a subsequent transfer of these automobiles by River Ranch to the defendant.

Prior to these transfers, both plaintiff and defendant, automobile dealers, had been using the services of River Ranch for the purpose of selling used or rental vehicles at auction. Plaintiff, an out-of-state dealer, typically carried out these transactions by signing over to River Ranch the out-of-state titles to these vehicles. By virtue of these transfers, River Ranch would receive an Arizona Certificate of Title. River Ranch would then furnish invoices to plaintiff which designated him as "consignor."

While these invoices itemized "expenses advanced," we are unable to determine from the record the method of ascertaining the cost of River Ranch's services (i. e., whether a fixed price or a percentage of the profits). In any event, after the sale, River Ranch would issue a check to the dealer furnishing the car.

In December, 1968, plaintiff transferred the two cars in question in the above-described manner. According to the deposition of Warren Holt, manager of defendant's sales and operations, shortly after these transfers occurred, the defendant was holding uncollectable checks issued to defendant by River Ranch totalling $30,000. In an effort to salvage some of this loss, Holt went to River Ranch and exchanged two checks totalling $7,460 for the two automobiles in question.

A replevin action was commenced by plaintiff seeking return of these two vehicles or their reasonable value. Since a writ of replevin had issued restoring possession to the plaintiff, the defendant requested the reasonable value of the vehicles and damages for loss of use. At the

time the suit was commenced, their reasonable value was $7,460 and their fair rental value was $10 per day.

Both parties moved for summary judgment. Plaintiff contended that A.R.S. § 44–2343, subsec. C, par. 2 [1] (U.C.C. 2–326(3)(b)) controlled, arguing that defendant was a creditor of River Ranch and that River Ranch was generally known by its creditors as engaged in selling goods of another.

Defendant, in opposition to this motion, argued to the contrary, maintaining that this subsection, which plaintiff relied on, only covers consignment arrangements and the transaction between plaintiff and River Ranch was a "sale." In support of its own motion, it contended it was a "good faith purchaser for value" under A.R.S. § 44–2348, subsec. A [2] (U.C.C. 2–403(1)) when it received two automobiles in satisfaction of River Ranch's pre-existing debt.

From a summary judgment in favor of the plaintiff finding A.R.S. § 44–2343 applicable and controlling, and a finding that plaintiff had established that River Ranch was engaged in a business generally known by its creditors as selling goods of others, defendant appeals.

I. A.R.S. § 44–2343 provides:

"A. Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:
1. A 'sale on approval' if the goods are delivered primarily for use, and
2. A 'sale or return' if the goods are delivered primarily for resale.
B. Except as provided in subsection C, goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.
C. Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to

the person making delivery until payment or resale or uses such words as 'on consignment' or 'on memorandum'. However, this subsection is not applicable if the person making delivery:
1. Complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or
2. Establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or
3. Complies with the filing provisions of the article on secured transactions (article 9).

2. A.R.S. § 44–2348, subsec. A provides:

"A. A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power . . . ."

The questions presented to this court on review are:

1. Was the defendant a creditor of or a purchaser from River Ranch when it acquired the two vehicles?

2. Is the transaction between River Ranch and plaintiff governed by A.R.S. § 44–2343?

3. Was the plaintiff entitled to relief as a matter of law?

## IS THE DEFENDANT A CREDITOR OF, OR A PURCHASER FROM RIVER RANCH?

■ Defendant correctly points out that A.R.S. § 44–2348, subsec. A protects a "purchaser for value" who obtains goods from those who have voidable title. A.R.S. § 44–2343, on the other hand, protects creditors of those in possession of the goods. American National Bank v. Tina Marie Homes, Inc., 28 Colo.App. 477, 476 P.2d 573 (1970); American National Bank v. Christensen, 28 Colo.App. 501, 476 P.2d 281 (1970); American National Bank v. First National Bank, 28 Colo.App. 486, 476 P.2d 304 (1970); Sussen Rubber Co. v. Hertz, 19 Ohio App.2d 1, 249 N.E.2d 65

(1969); Guardian Discount Co. v. Settles, 114 Ga.App. 418, 151 S.E.2d 530 (1966). (For a discussion of types of people covered under the two statutes, *see,* 14 Catholic U.L.Rev. 89 (1965).) While admitting it is not a "buyer in the ordinary course of business" under A.R.S. § 44–2348, subsecs. B or C, the defendant contends it is a "purchaser for value" and therefore A.R.S. § 44–2348, subsec. A rather than § 44–2343, subsec. C is controlling as to this cause.

In considering the merit of this argument, it is necessary to determine under what circumstances one takes by "purchase."[3] At common law, courts in a majority of jurisdictions had taken the position that a pre-existing debt was not sufficient consideration for the purchase of a chattel and therefore such a person was not a "bona fide purchaser for value." His status as creditor, therefore, remained unchanged. *See,* citations in 11 A.L.R.3d 1028 § 3; Am.Jur. Sales §§ 467 and 472. This view is based on the theory that, as such person pays nothing, he loses nothing by reason of the exchange since the antecedent debt is automatically revived upon failure of the title to the chattel. Diesel Equipment Corp. v. Epstein, 246 La. 953, 169 So.2d 61 (1964). The Uniform Sales Act, enacted in many jurisdictions, changed this by recognizing that the cancellation of the debt is a surrender of something valuable. *Cf.* Western Casualty & Surety Co. v. United States, 109 F.Supp. 422, 124 Ct.Cl. 156 (1953).

Arizona, whose sales law was governed by the Uniform Sales Act prior to 1968, enacted the Uniform Commercial Code in that year repealing the Act. While it is true that the Code altered many provisions in the Sales Act, it did not change the definition of "value" under such circumstances as presented *sub judice.* The "Official Code Comment" following U.C.C. 1–201 (44) points out that subsection (b) continues the definition of "value" used in this earlier Act. Although Arizona has not seen fit to adopt these Comments, and we do not think them necessarily controlling in all instances in construing the Code, we are of the opinion that this is what our legislature intended in passing this statute. (*Compare,* Uniform Sales Act, A.R.S. § 44–276, subsec. 21 *with* A.R.S. § 44–2208, subsec. 44, par. b).

Therefore, the trial court erred when it determined that A.R.S. § 44–2343 was controlling as to this case. The defendant is a "purchaser for value" in exchanging the previously issued checks for the two cars in question.

We therefore find it unnecessary to discuss defendant's second argument as to why A.R.S. § 44–2343 is not controlling.

## IS THE PLAINTIFF ENTITLED TO RELIEF AS A MATTER OF LAW?

[redacted] Our determination that the trial court incorrectly concluded that A.R.S. § 44–2343 is controlling as to this case does not necessarily mean that its judgment should be reversed. An appellate court will not reverse a correct judgment even though a wrong reason was assigned by the lower court. Komarek v. Cole, 94 Ariz. 94, 381 P.2d 773 (1963); Arnold v. Knettle, 10 Ariz.App. 509, 460 P.2d 45 (1969); City of Tucson v. Morgan, 13 Ariz. App. 193, 475 P.2d 285 (1970). In order for the defendant to acquire a good title as against the plaintiff under A.R.S. § 44–2348, subsec. A, it must not only show that it is a "purchaser for value," but that it

3. As defined in A.R.S. § 44–2208, subsec. 33 (U.C.C. 1–201(33)):

"'Purchaser' means a person takes by purchase."

And a "Purchase":

". . . includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift or any other voluntary transaction creating an interest in property." A.R.S. § 44–2208 subsec. 32 (U.C.C. 1–201(32)).

A.R.S. § 44–2208, subsec. 44, par. b (U.C.C. 1–201(44) (b)) provides in part:

". . . a person gives 'value' for rights if he acquires them. . . ."

"(b) As security for or in total or partial satisfaction of a pre-existing claim. . . ."

has purchased in "good faith."[4] Bender's U.C.C. Service, Sales § 10.06[1]. The following portions of the deposition of defendant's sales manager, Warren Holt, reveal that defendant does not meet this necessary requirement:

"Q. So would it be fair to say that as far as you were concerned, that River Ranch Auto Auction was primarily engaged in selling cars of other people at auctions?

A. Yes, I think that is a fair statement.

\*  \*  \*  \*  \*  \*

Q. Let me ask you this. You had them sell your cars for you and your organization, National Car Rental?

A. As opposed to me selling the cars directly to River Ranch?

Q. Yes. You.

A. Yes, that is correct.

Q. And it was your understanding that this was substantially the type of business they did for most people, isn't that correct?

A. Yes, I would—substantially that is correct.

\*  \*  \*  \*  \*  \*

Q. So you were aware that Hertz and Avis you say were doing business?

A. Yes. They had both. They had both done business with River Ranch prior to my having done business with them.

Q. Were they doing the same type of business?

A. That is correct.

\*  \*  \*  \*  \*  \*

Q. They turned in their cars and let River Ranch peddle them for them, is that correct?

A. Sell them for them, that is correct."

As noted in Atlas Auto Rental Corp. v. Weisberg, 54 Misc.2d 168, 281 N.Y.S.2d 400, 405 (1968):

". . . [t]he Uniform Commercial Code protects the innocent purchaser, but it is not a shield for the sly conniver. . . ."

Defendant cannot simply seek to minimize its loss to River Ranch by exchanging the pre-existing checks for two cars in River Ranch's possession when it knows that River Ranch is primarily engaged in selling cars of others.

■ We recognize that the question of notice to a subsequent "purchaser" usually involves a dispute as to a material fact which cannot ordinarily be determined on a motion for summary judgment. Hudesman v. Foley, 73 Wash.2d 880, 441 P.2d 532 (1968); 92 C.J.S. Vendor & Purchaser § 374. Where, however, the undisputed facts are such that only one conclusion may be drawn therefrom, summary judgment is proper. *Cf.*, Choisser v. State ex rel. Herman, 12 Ariz.App. 259, 469 P.2d 493 (1970); Pesqueira v. Talbot, 7 Ariz.App. 476, 441 P.2d 73 (1968). In such circumstances as presented *sub judice,* we think that defendant knew or should have known that River Ranch was not the true owner of the automobiles in question. Therefore, it was not a "good faith purchaser for value." Bender's U.C.C. Service, Sales § 4.08[3]. Defendant's reliance on Price v. Universal C.I.T. Credit Corp., 102 Ariz. 227, 427 P.2d 919 (1967) and Patterson Motors, Inc. v. Cortez, 2 Ariz.App. 298, 408 P.2d 231 (1965) is unavailing for these cases dealt with *innocent* purchasers. *See,* O'Malley v. United Producers & Consumers Co-op., Inc., 95 Ariz. 134, 387 P.2d 1016 (1963).

■ An additional contention raised by the defendant for the first time on appeal

---

4. Under A.R.S. § 44–2208, subsec. 19 (U.C.C. 1–201 (19)), good faith is defined as:
    ". . . honesty in fact in the conduct or transaction concerned."
and further includes in the case of a merchant (as defendant is here) under

A.R.S. § 44–2303, subsec. A, par. 2 (U.C.C. 2–103(1)(b)):
    ". . . the observance of reasonable commercial standards of fair dealing in the trade."

presents the question as to whether plaintiff's endorsement of the Wisconsin certificate of title to River Ranch constituted a written memorandum which may not be contradicted by evidence of any prior agreements under A.R.S. § 44–2309 (U.C.C. 2–202). Issues not raised in the lower court will not be considered on appeal. Crocker v. Crocker, 7 Ariz.App. 303, 438 P.2d 772 (1968); Kenyon v. Kenyon, 5 Ariz.App. 267, 425 P.2d 578 (1967); Miller v. Boeger, 1 Ariz.App. 554, 405 P.2d 573 (1965). We therefore do not consider the validity of this contention.

There being no material factual issues and plaintiff being entitled to judgment as a matter of law, the judgment is affirmed.

HATHAWAY and HOWARD, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.