**In re Thomas Edward RYAN, Debtor.**

**Peter M. STERN, Trustee, Plaintiff,**

**v.**

**CONTINENTAL ASSURANCE COMPANY, Defendant.**

**Bankruptcy No. 4–82–835G.**
**Adv. No. 4–83–305.**

United States Bankruptcy Court,
D. Massachusetts.

Feb. 27, 1987.

510

Peter Stern, trustee, pro se.

Bradford R. Martin, Jr., Ryan & White, Springfield, Mass., for CNA Ins.

## OPINION AND ORDER

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

This case presents novel questions concerning whether a trustee in bankruptcy is subject to inquiry notice in his alternative capacities as hypothetical judicial lien creditor, holder of an execution returned unsatisfied, and *bona fide* purchaser of real property. Also involved is the question of whether the recording of an improperly witnessed mortgage constitutes constructive notice of the mortgage under applicable state law.

Peter Stern, the trustee in bankruptcy (the "Trustee") of Thomas Edward Ryan (the "Debtor"), brings this adversary proceeding against Continental Assurance Company (the "Bank") to set aside the Bank's real estate mortgage pursuant to the so-called "strong arm" clause contained in 11 U.S.C. § 544(a).[1]  The facts are undis-

---

1. 11 U.S.C. § 544(a) reads as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

puted. On November 11, 1975, the Debtor purchased from Quechee Lakes Corporation a condominium unit located in Hartford, Vermont. Title was placed in the Debtor's name, and on the same day the Debtor gave the seller a mortgage on the property in order to secure a loan used to finance the purchase. On November 17, 1975, Quechee Lakes Corporation assigned the mortgage to the Bank. The deed, mortgage and assignment of mortgage were all recorded in the town's records. The present problem arises because the mortgage was witnessed by only one witness rather than by two witnesses as required by Vermont statute.[2] The deed and mortgage assignment both had the necessary two subscribing witnesses. The Trustee, claiming under § 544(a) the alternative rights of a judicial lien creditor, the holder of an execution returned unsatisfied, and a *bona fide* purchaser of real property (other than fixtures), seeks to have the mortgage declared void by reason of the missing witness. By stipulation of the parties, the property has been sold and the mortgage debt paid to the Bank. The Bank has agreed to repay the Trustee if the Court invalidates the mortgage. For the reasons set forth in this opinion, we hold that the mortgage is valid against the Trustee.

## I. CONSTRUCTIVE NOTICE

Although § 544(a) gives a trustee rights "without regard to any knowledge of the trustee or of any creditor," the knowledge to be disregarded is only the personal knowledge of a trustee or creditor. *Maine National Bank v. Morse (In re Morse)*, 30 B.R. 52, 54 (Bankr. 1st Cir. 1983). The trustee's rights, in any capacity under § 544(a), are nevertheless subject to the effect of any constructive notice which state law deems is given by public recordings or by the possession of one who holds no interest of record. Any other interpretation would clothe the trustee with powers that no purchaser could have under the state law, a result that Congress could not have intended. *McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982); *Saghi v. Walsh (In re Gurs)*, 27 B.R. 163 (Bankr. 9th Cir. 1983); *Ellsworth v. Fitzpatrick (In re Fitzpatrick)*, 29 B.R. 701 (Bankr.W.D.Wis. 1983).

The Vermont statute requiring two witnesses does not state the effect of noncompliance. It merely provides that the instrument "shall be" signed by the grantor and two witnesses, and acknowledged and recorded. Vermont has a curative statute [3], as do many states, providing that defects such as improper witnessing do not invalidate a recorded instrument after 15 years. Because 15 years have not lapsed since the filing of the Bank's mortgage, the curative statute does not remedy the defect. It is, however, clear from the curative statute that its provisions were not intended to

---

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

**2.** VT.STAT.ANN. tit. 27, § 341 provides:

Deeds and other conveyances of lands, or of an estate or interest therein, shall be signed by the party granting the same and signed by two or more witnesses and acknowledged by the grantor before a town clerk, notary public, master, county clerk or judge or register of probate and recorded at length in the clerk's office of the town in which such lands lie. Such acknowledgement before a notary public shall be valid without his official seal being affixed to his signature.

**3.** VT.STAT.ANN. tit. 27, § 348 provides as follows:

When an instrument of writing shall have been on record in the office of the clerk in the proper forum for a period of fifteen years, and there is a defect in the instrument because it omitted to state any consideration therefor or was not sealed, witnessed, acknowledged, validly acknowledged, or because a license to sell was not validly issued, the instrument shall, from and after the expiration of fifteen years from the filing thereof for record, be valid. Nothing herein shall be construed to affect any rights acquired by grantees, assignees or encumbrances under the instruments described in the preceding sentence, nor shall this section apply to conveyances or other instruments in writing, the validity of which is brought in question in any suit now pending in any courts of the state.

affect rights which may have been acquired under any instrument. Nor do we receive guidance on the Bank's rights from the principal Vermont recording statute,[4] which purports to deal only with the effect of failure to acknowledge and record.

In *Day v. Adams*, 42 Vt. 510 (1869), the Supreme Court of Vermont held that the recording of a prior deed signed by just one witness was not constructive notice affecting the rights of a subsequent purchaser. The court dismissed the claim of the subsequent purchaser who sought damages for breach of covenants of title in his deed. The court based its holding on two grounds: (1) lack of constructive notice; and (2) the ineffectiveness of the prior deed to convey superior title because of homestead rights held by one who was not a grantor in the prior deed. There is no indication in the decision as to whether the plaintiff had acquired actual knowledge of the prior deed. Presumably he did not because otherwise the decision would likely have been based on this ground; however, it is hard to understand how a buyer could fail to acquire such knowledge. Nor is there any discussion by the court concerning inquiry notice. *Day v. Adams* has not been overruled by the Supreme Court of Vermont. It appears to represent the weight of authority elsewhere. *See* 4 *American Law of Property* § 17.31 (1952); 6A R. Powell & P. Rohan, *Powell on Real Property* § 904[4] (1986). The statutes of some states, but not Vermont, provide that the recording of instruments lacking statutory prerequisites does give constructive notice. 4 *American Law of Property* § 17.27 (1952).

█ The Bank seeks to take advantage of the fact that its mortgage was assigned by an instrument of assignment which was properly signed, witnessed, acknowledged and recorded. It argues that the assignment gives constructive notice of the mortgage, citing *Tindale v. Bove*, 97 Vt. 465,

124 A. 585 (1924). The court in *Tindale* held that a properly signed, witnessed, acknowledged, and recorded deed gave constructive notice of an improperly witnessed, recorded mortgage because the deed mentioned the mortgage. In that case, however, the properly executed instrument was within the chain of title. Here it is not. If we accept the principle of law that the mortgage itself gives no constructive notice, it would be inconsistent to rule that the assignment does give such notice, in view of the fact that a title search would not disclose the assignment without tracing it from the mortgage. There is no constructive notice of transfers which are outside the chain of title. 4 *American Law of Property* § 17.17 (1952).

█ If we apply existing precedents, therefore, we arrive at the conclusion that the Bank's recorded mortgage does not give constructive notice. We do not, however, believe that the Supreme Court of Vermont would be inclined to follow *Day v. Adams* today. The case was decided in an age when formal and technical compliance with the law was regarded as sacrosanct. The court believed that failure to do so would lead to the erosion of all statutory requirements, stating: "But if one of two witnesses may be dispensed with, both may, and on the same principle all the statutory requirements may be disregarded." *Day v. Adams, supra*, at 515. This reasoning represents neither compelling logic nor the attitude of courts today toward statutory requirements as to form.

Although the approach in *Day v. Adams* seems to represent a majority view when one scans property law authorities such as Powell and the *American Law of Property*, this "majority" consists largely of turn-of-the-century cases in which courts slavishly observed rigorous technical requirements. *See* 4 *American Law of Property* § 17.31 n. 16 (1952) (cases cited in foot-

---

4. VT.STAT.ANN. tit. 27, § 342 reads as follows:
    A deed of bargain and sale, a mortgage or other conveyance of land in fee simple or for term of life, or a lease for more than one year from the making thereof shall not be effectual to hold such lands against any person but the grantor and his heirs, unless the deed or other conveyance is acknowledged and recorded as provided in this chapter.

note); *compare Torgeson v. Connelly*, 348 P.2d 63 (Wyo.1959) (no constructive notice provided) *with Leighton v. Leonard*, 22 Wash.App. 136, 589 P.2d 278 (1978), *as corrected* (1979) (constructive notice provided despite lack of acknowledgement). Courts in the present day are more willing to disregard a minor error in form if ignoring the error will not prejudice other parties' rights.

Perhaps the best illustration of the modern viewpoint placing substance over form is in an analagous area of law: the Uniform Commercial Code. Section 9–402(8) of the Uniform Commercial Code adds a common sense limitation to the formal requirements for financing statements. It provides: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." U.C.C. § 9–402(8). The Official Comment to this subsection states that it "is designed to discourage the fanatical and impossibly refined readings of such statutory requirements in which courts have occasionally indulged themselves." U.C.C. § 9–402(8) comment 9. The comment cites as an example of such formalism *General Motors Acceptance Corp. v. Haley*, 329 Mass. 559, 109 N.E.2d 143 (1952), where a filing made against a debtor under the name "E.R. Millen Company" rather than its correct name of "E.R. Millen Co., Inc." was held not to give constructive notice.

We believe that the Supreme Court of Vermont would likely approach the problem today by first distinguishing among three topics: (1) the effect of the Bank's mortgage between the original parties as an agreement to mortgage, as opposed to a present mortgage; (2) whether the mortgage was properly accepted for recording; and (3) its effect as constructive notice of the rights of the Bank. The Court would probably resolve the latter question by requiring that the mortgage not be seriously misleading, taking its cue from the Uniform Commercial Code, and rule that the essential requirement of execution is that the instrument be signed, or perhaps both

signed and acknowledged. It seems highly unlikely that the court would require a three-fold guaranty of authenticity in execution consisting of acknowledgment before a notary public and two additional witnesses. This approach would be formalism to an extreme.

Our conclusion that the Supreme Court of Vermont would probably look to substance and not form is confirmed by *Benjamin Franklin Savings & Loan Assoc. v. New Concept Realty & Development (In re New Concept Realty & Development)*, 753 F.2d 804 (9th Cir.1985). There the acknowledgment clause in a recorded instrument did not comply with the statute requiring the notary to state that the grantor was known to him or had been identified by him. The Ninth Circuit certified to the Supreme Court of Idaho the question of whether the instrument provided constructive notice. It received an affirmative answer from the state court, and held against the trustee on his § 544(a) attack.

The Vermont statute concerning the effect of a deed or mortgage upon third parties does not mandate a different result. VT.STAT.ANN. tit. 27, § 342, quoted in full in the margin, speaks only of the instrument being acknowledged and recorded in order to be "effectual" against third parties. *Day v. Adams, supra,* dismissed the significance of these minimal requirements by an unconvincing reference to another statute which requires two witnesses a deed to be proved, inferring from this latter statute that two witnesses are necessary for "the validity of a deed." The court confused the validity of the instrument as a present conveyance with its ability to give constructive notice of either a present conveyance or an agreement to convey.

Additional insight into the constructive notice effect of the recording of a non-complying instrument is provided by *Matos v. Gwinnett Bank & Trust Co. (In re Matos)*, 50 B.R. 742 (N.D.Ala.1985), *appeal dism'd. as moot,* 790 F.2d 864 (11th Cir.1986).

There the debtor sought to use § 544(a) to avoid a recorded mortgage which did not contain the name and address of its preparer, contrary to an Alabama statute which prohibited the recording officer from accepting such instruments for record. The court ruled that the mortgage nevertheless gave constructive notice. The statute's legislative history indicated an intent to give notice effect to noncomplying instruments in order to avoid the confusion occasioned by having instruments on record which do not give constructive notice. This reasoning seems practical.

## II. INQUIRY NOTICE

Even if the Supreme Court of Vermont would reaffirm *Day v. Adams* on the constructive notice effect of the Bank's mortgage, we hold that the mortgage is nevertheless valid against the Trustee because it gave inquiry notice to the Trustee. This topic requires a more detailed analysis of the Trustee's status as a *bona fide* purchaser.

### A. *Trustee as Bona Fide Purchaser of Real Property*

The Trustee's status as a *bona fide* purchaser of real property is still relatively new. The Bankruptcy Reform Act of 1978 (P.L. 95–598, 92 Stat. 2549 *et seq.*) added the *bona fide* purchaser status to the trustee's avoiding powers under the strong arm clause. The former strong arm clause,

Section 70(c) of the previous Bankruptcy Act (11 U.S.C. § 110(c) (repealed 1978)), gave the trustee only the hypothetical status of a judicial lien creditor, the holder of an execution returned unsatisfied, and a judgment creditor.[5] The present Bankruptcy Code contains no definition of *bona fide* purchaser, unlike the initial bill filed by the Commission on the Bankruptcy Laws of the United States [6] and a subsequent bill filed by the National Conference of Bankruptcy Judges,[7] both of which had the same definition.[8] The legislative history of § 544(a) makes no attempt to describe the nature of this new status, nor does it provide any reason for its inclusion in the trustee's armament. In some states judicial lien creditors are subordinate to holders of unrecorded mortgages. It has been suggested that Congress gave the trustee the rights of a *bona fide* purchaser of real property so that, in these states, a trustee could take priority over unrecorded mortgages to the same degree as he has priority over unperfected security interests under § 9–301 of the Uniform Commercial Code.[9]

If this was indeed the reason, Congress may have given the trustee nuclear capability where more conventional weaponry would have sufficed. The trustee's status as a *bona fide* purchaser of real property has been interpreted as enabling him to invalidate far more than unrecorded mortgages. Some courts, but not all, have per-

**5.** The trustee's status as a judgment creditor was inserted in 1966 in order to give the trustee priority over federal tax liens which were expressly inferior to judgment creditors under the tax statutes. But by the time of eventual passage of the 1966 amendment, the Supreme Court had handed down its decision in *United States v. Speers*, 382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965), holding that the trustee already had the status of judgment creditor by virtue of his status as a judicial lien creditor, thus rendering the amendment unnecessary. *See* 4B *Collier on Bankruptcy* ¶ 70.47 (14th ed. 1978); Countryman, *The Use of State Law in Bankruptcy Cases (Part II)*, 47 N.Y.U.L.REV. 631, 649 (1972).

**6.** H.R. 31, 94th Cong., 1st Sess. § 1–102(8) (1975).

**7.** H.R. 32, 94th Cong., 1st Sess. § 1–102(6) (1975).

**8.** Both bills defined a "bona fide purchaser" as "a purchaser for value who takes without notice of any fact creating an infirmity in the transferer's title or a limitation on his right to transfer property to the purchaser, and includes the transferee, immediate or mediate, of any such purchaser."

**9.** *See* 2 W. Norton, *Norton Bankruptcy Law and Practice* § 30.05 (1981). *See also* Levin, *An Introduction to Trustee's Avoiding Powers*, 53 AM. BANK.L.J. 173 (1979); Rendleman, *Liquidation in Bankruptcy Under the '78 Code*, 21 WM. & MARY L.REV. 575, 612–14 (1980); Teofan & Creel, *The Trustee's Avoiding Powers Under The Bankruptcy Act and the New Code: A Comparative Analysis*, 85 COM.L.J. 542, 545 (1980).

mitted the trustee as a *bona fide* purchaser to defeat claims to ownership interests. The trustee has often been successful in attacking equitable interests arising from constructive trusts or mistakes in deed descriptions, as well as outright interests arising from delay in the recording of a deed.[10] The problem in the case at bar, however, involves the subject of inquiry notice and the more traditional attack by a trustee against a mortgage.

■ A *bona fide* purchaser is one who purchases without notice (either inquiry or constructive) of the claims of others. *Restatement of Restitution* § 172 (Amer.Law Inst.1937). Congress could not, however, have intended the trustee in his status of *bona fide* purchaser to have greater rights than any purchaser could obtain in the particular circumstances under state law. *See McCannon v. Marston*, 679 F.2d 13, 16 (3rd Cir.1982). The trustee is subject to whatever constructive notice is present under state law. *McCannon v. Marston, supra; Saghi v. Walsh (In re Gurs)*, 27 B.R. 163 (Bankr. 9th Cir.1983). If under state law any purchaser would also be subject to inquiry (or actual) notice, by the same rea-

soning the trustee should be subject to such notice. *See In re Morse, supra.* In *McCannon v. Marston, supra*, the court seems to regard inquiry notice in the same category as constructive notice. *See McCannon v. Marston, supra*, at 17. And although the *McCannon* court's actual holding was that a contracting buyer's possession constituted constructive notice, possession is generally considered to create issues of inquiry notice rather than constructive notice. *See 4 American Law of Property* § 17.12 (1952).

A bankruptcy appellate panel for this circuit has held that the trustee, in his various roles under § 544(a), is subject to inquiry notice provided by a properly recorded instrument in the public records. *Maine National Bank v. Morse (In re Morse)*, 30 B.R. 52 (Bankr. 1st Cir.1983). In *Morse*, a bank had mistakenly discharged a properly acknowledged and recorded mortgage from the debtor. The bank then attempted to foreclose on the property, and filed a certificate of foreclosure on the record; the debtor filed his bankruptcy petition soon afterward. The bankruptcy court below held that the trust-

---

**10.** *See, e.g., A.L. Orchards Ltd., Series 1 v. Janis (In re Janis)*, 45 B.R. 295 (Bankr.S.D.Fla.1985) (constructive trust claim avoided); *Clark v. Kahn (In re Dlott)*, 43 B.R. 789 (Bankr.D.Mass. 1983) (debtor's deed as trustee rather than individually held not subject to reformation based upon mistake); *Sprague v. Kelly (In re Kelly)*, 29 B.R. 708 (Bankr.D.Me.1983) (debtor's deed recorded two hours after bankruptcy filing held ineffective); *Noyes v. Phillips (In re Phillips)*, 21 B.R. 565 (Bankr.D.Conn.1982) (joint venturer's claim of constructive trust defeated). If the purchaser of an unrecorded deed is in possession of the property, his possession may be sufficient constructive notice to other purchasers. *See, e.g., McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982); *Fitzgerald v. Thornley (In re Lewis)*, 19 B.R. 548 (Bankr.D.Idaho 1982). *Cf. Hampton v. Hampton (In re Hampton)*, 43 B.R. 633 (Bankr.M.D.Fla.1984) ("mechanical" application of § 544(a) refused where it would defeat wife's "special equity" in property held only in debtor's name); *Beutel v. Joanis (In re Investment Sales Diversified, Inc.)*, 38 B.R. 446 (Bankr. D.Minn.1984) (debtor holds bare legal title because of unrecorded assignment of contract for deed). The problem created by these ownership cases involves a reconciliation of § 544(a)(3) with two sections governing the nature of the

property interest in the estate, § 541(d) and § 551. *See Elin v. Busche (In re Elin)*, 20 B.R. 1012 (D.N.J.1982) (§ 541(d) does not protect against attack under § 544(a)(3) because of presence of § 551). This entire situation is reminiscent of the havoc created by the trustee under Section 60 of the old Bankruptcy Act when that Act provided that a transfer of both real and personal property was completed for preference transfer purposes when it was so far perfected that no *bona fide* purchaser or attaching creditor could acquire superior rights. *See Corn Exchange National Bank & Trust Co. v. Klauder*, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1943). Because of the *Klauder* decision, the 1950 amendments discarded the *bona fide* test for personal property transfers. *Collier* pointed out that the remaining *bona fide* purchaser test for real estate merely established a standard by which to judge when a transfer is completed for preference purposes, and that it did not give the trustee any independent rights as a *bona fide* purchaser. *Collier* believed that giving the trustee general rights as a *bona fide* purchaser would give him the inequitable right to defeat rights of rescission for fraud and other matters. *See 3 Collier on Bankruptcy* ¶ 60.40 at 970–71 (14th ed. 1978).

ee in bankruptcy had priority over the bank because the discharge removed the mortgage from the record. If the mortgage was not on the record, the bankruptcy court reasoned that it could not be effective against third parties. *Maine National Bank v. Morse (In re Morse),* 23 B.R. 160, 161–62 (Bankr.D.Me.1982). The appellate panel reversed, holding that the recorded certificate of foreclosure gave the trustee inquiry notice under the law of Maine. The panel considered the phrase "without regard to the knowledge of the trustee" as referring *only* to the trustee's personal knowledge. *Morse,* 30 B.R. at 54. After reviewing extensive Maine case law concerning inquiry notice, the court concluded that the trustee could still be charged, like any *bona fide* purchaser or creditor, with the knowledge of facts which would lead to discovery of the claim of another if such facts were available from the record. Any other construction of § 544(a) might give the trustee greater rights than any purchasers could have under state law. *See id.* at 54–55.

*Morse,* however, was based upon the law of Maine concerning inquiry notice. Moreover, in *Morse* the certificate of foreclosure was properly recorded, so that there was at least constructive notice of a claim to a mortgage. We are confronted in the present case with circumstances which we in this part assume provide no constructive notice.

■ Research discloses no Vermont statute or decision dealing with the question of whether a purchaser is under a duty of inquiry to search the public real estate records in order to discover what is in fact there. It is, however, established in Vermont that a purchaser is charged with the duty to inquire as to the rights of one in possession. If he does not, he is nevertheless subject to the rights of the possessor. *Tomasi v. Kelly,* 100 Vt. 318, 137 A. 196 (1926). And, of course, actual knowledge of an improperly witnessed instrument, acquired by one who sees the instrument or is told of it, is equivalent to constructive

notice in granting priority to the earlier instrument. *Tindale v. Bove,* 97 Vt. 465, 124 A. 585 (1924); *Gilchrist & Chamberlin v. Van Dyke,* 63 Vt. 75, 21 A. 1099 (1890); *Morrill v. Morrill,* 53 Vt. 74 (1880). Except for these principles, Vermont law gives little guidance on the duty of inquiry which is imposed upon all purchasers of real estate. We are therefore remitted to examination of the doctrine of the good faith purchaser as it has evolved in the common law over many years. *See* 1A J. Moore, *Moore's Federal Practice* ¶ 0.309[2], at 3121–29 (1985).

The doctrine of the good faith purchaser first developed in commercial law through so-called Factor's Acts as a protection for purchasers against faithless agents of the owners of goods. Gilmore, *The Commercial Doctrine of Good Faith Purchase,* 63 YALE L.J. 1057, 1057–58 (1954). The doctrine was expanded by the courts through the concept of "voidable title" in cases dealing with both chattels and real estate. *Id.* at 1058–62; Warren, *Cutting off Claims of Ownership Under the Uniform Commercial Code,* 30 U.CHI.L.REV. 469 (1963). Under this theory, the courts distinguished the situation where the owner parts with possession or record of title through theft or fraud "in the factum," in which case the possessor's title was void, from the situation where the transfer is prompted by fraud in the inducement or by mistake, in which case the transferee had voidable title. Voidable title permitted the transferee to sell to a *bona fide* purchaser, who would thereby acquire rights superior to those of the original owner. *See Restatement of Restitution* § 172 comment "a" (Amer.Law Inst.1937) (transfer of property to *bona fide* purchaser is free of "constructive trust").

In order for the purchaser to be *bona fide,* however, he is generally required to acquire property, whether it be a chattel or real estate, without notice of circumstances that would obligate him to hold the property under constructive trust or subject to an

equitable lien.[11] If such circumstances are evident from the record of title or by viewing the property, the purchaser is charged with the knowledge of the circumstances whether he knew the facts or should have known them. If the purchaser is aware of circumstances which would lead a reasonably intelligent and dilligent person to inquire further, and if such inquiry would lead to actual knowledge of the claim of another, he is denied the status of *bona fide* purchaser. *See Restatement of Restitution* § 174 (Amer.Law Inst.1937).· An exception to this duty of inquiry was carved out for negotiable instruments, where the holder was treated as a good faith purchaser even though he was negligent in not knowing the equities. *Id.; Uniform Negotiable Instruments Act* § 56. In negotiable instrument law, the test was purely a subjective one of honesty; this standard facilitated holder in due course status and thereby promoted negotiability. Gilmore, *The Commercial Doctrine of Good Faith Purchase*, 63 YALE L.J. 1057, 1062–68 (1954).

The Uniform Commercial Code increased the protection given a *bona fide* purchaser of goods. The U.C.C. applied the voidable title doctrine to purchases where the delivery is induced by a bad check or fraud punishable under the criminal laws, two areas where there had been disagreement among the courts.[12] U.C.C. § 2–403 comment 1. The U.C.C. defines "good faith" in general as "honesty in fact in the conduct or transaction concerned." U.C.C. § 1–201(19). With respect to merchants under Article 2 on sales, good faith is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." U.C.C. § 2–103(1)(b). Thus, only a merchant is held to an objec-

tive standard; otherwise, a subjective standard applies in transactions involving goods as well as negotiable instruments ("commercial paper" in the U.C.C.). It would appear that the draftsmen were heavily influenced by considerations applicable primarily to the free negotiability of commercial paper. The courts, in any event, have not hesitated to apply objective standards to the sale of goods. *See, e.g., Hollis v. Chamberlain*, 4 U.C.C.Rep. 716, 243 Ark. 201, 419 S.W.2d 116 (1967) (purchaser not in good faith because he asked no questions despite suspicious circumstances in the sale of a camper); *National Car Rental v. Fox*, 11 U.C.C.Rep. 320, 18 Ariz.App. 160, 500 P.2d 1148 (1972) (purchaser not in good faith because the known fact that seller often sold motor vehicles owned by others should have prompted inquiry). Courts have generally followed an objective standard for *bona fide* purchasers of real estate, holding purchasers responsible for any facts which may have been discovered through a proper investigation of the record or circumstances. *See* 6A R. Powell & P. Rohan, *Powell on Real Property.* § 905[2] & nn. 28–36 (1986).

The doctrine of good faith purchase in the sale of both chattels and real estate has, therefore, traditionally required the purchaser to make inquiry if the circumstances would indicate to a reasonably intelligent and dilligent person that an inquiry should be made. And if such an inquiry would lead to knowledge of the claims of others, the purchaser is charged with that knowledge.

■ The application of this principle to the present case seems clear. In dealing with real estate, a buyer must be held to be aware of the central role played by the public recording system. The public re-

---

**11.** *Restatement of Restitution* § 172 (Amer.Law. Inst.1937) reads as follows:

§ 172 BONA FIDE PURCHASE
(1) Where a person acquires title to property under such circumstances that otherwise he would hold it upon constructive trust or subject to an equitable lien, he does not so hold it if he gives value for the property without notice of such circumstances.

(2) In the Restatement of this Subject such a transferee is called a *bona fide* purchaser.

**12.** Interestingly, a draftsman of the Code has had second thoughts about several of its doctrines favoring good faith purchasers and holders in due course. *See* Gilmore, *The Good Faith Purchase Idea and The Uniform Commercial Code: Confessions of a Repentent Draftsman,* 15 GA.L.REV. 605 (1981).

cording office is generally known to be the repository of all instruments affecting title to real estate. There is no complete repository for the transfer of personal property interests, where bills of sale are almost never recorded and purchase money interests in consumer goods are often not recorded. It would be foolhardy and negligent for a buyer not to make inquiry by searching the public real estate transfer records, or, as is usually the case, having a professional do it for him. *See* 6A R. Powell & P. Rohan, *Powell on Real Property*, ¶ 904[2][C] (1986). Thus a *bona fide* purchaser must be held subject to inquiry notice of the Bank's mortgage. Section 544(a)(3) is not the apotheosis of the *bona fide* purchaser.

■ Treating the Bank's mortgage as sufficient to put a *bona fide* purchaser on inquiry is consistent with the effect given to possession in Vermont. As indicated earlier, a *bona fide* purchaser is generally charged with a duty to inquire as to the rights of one in possession of the real estate, and if he does not do so, he nevertheless takes subject to the rights of the possessor. *Tomasi v. Kelly*, 100 Vt. 318, 137 A. 196 (1926); *see American Law of Property* § 17.12 (1952). The possession, moreover, need not be personal and continuous. Cultivation of the property, or the cutting of timber, generally suffices. *American Law of Property* § 17.15 (1952). There would be a logical inconsistency if such vague indications of another's property interest created a duty to inquire, and the unmistakable claim arising from a mortgage on record lacking just one of two witnesses did not raise such a duty.

Treating the trustee as subject to inquiry notice and constructive notice is consistent with the good faith ascribed to him by § 544(a)(3). He would be acting in subjective bad faith only if he purchased the property with the intention of taking advantage of any priority over the Bank by reason of the missing witness in the Bank's mortgage. We hypothesize a buyer who has no such intention, but rather who accepts the Bank's priority, as indeed he must under Vermont law.

**B. *Trustee as Judicial Lien Creditor and Holder of Execution Returned Unsatisfied***

■ The Trustee should be held to similar standards in his hypothetical role as a judicial lien creditor or the holder of an execution which has been returned unsatisfied. A creditor can obtain a pre-judgment attachment on real estate only after a court hearing. *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Surely a reasonably intelligent and diligent creditor would search the real estate records in order to determine whether such a court procedure will bring him any benefit. Any post-judgment lien by such a creditor would also most likely follow a search of the records, because a post-judgment lien is the first step in an execution sale. Any such sale is an expensive and formal process which a creditor would likely commence only if he believes it worthwhile. The reasonable basis for such belief could only be a title search. A creditor holding an execution returned unsatisfied would also most likely be one who has searched the records, for the same reasons. Under Vermont law, a creditor's resulting knowledge of the Bank's mortgage subordinates him to the mortgage. *Morrill v. Morrill*, 53 Vt. 74 (1880) (attaching creditor who learned of prior recorded mortgage having only one witness takes subject to the mortgage).

Holding the Trustee in his creditor status to the same standards as those of his *bona fide* purchaser status is consistent with Vermont law for reasons beyond these practical realities. Traditionally, judicial lien creditors have been given fewer rights than *bona fide* purchasers. Unlike *bona fide* purchasers, they generally do not take real or personal property free of the equities of third parties. *Restatement of Restitution* § 173 comment "j" (Amer.Law Inst.1937). This is equally true in Vermont. *Reynolds v. Haskins*, 68 Vt.

426, 35 A. 349 (1896) (reformation of a deed describing the wrong lot allowed over the objection of an attaching creditor whom the court regarded as lacking the equities of a *bona fide* purchaser). Judicial lien creditors do not part with value in reliance upon obtaining their property interests. It would, therefore, be a strange result indeed if trustees in bankruptcy can obtain greater rights through their lien creditor status than through their *bona fide* purchaser status.

### Conclusion

The Trustee, in his multiple and hypothetical status under § 544(a), takes the property subject to the priority of the Bank's mortgage on two independent grounds: constructive notice and inquiry notice. The Trustee's complaint is dismissed.

SO ORDERED.